# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT,

## JANUARY TERM, 1869.

### HOWARD MANN *v.* JOHN F. R. McATEE

TIME WITHIN WHICH EXECUTION MAY ISSUE.—Up to April 8th, 1861, a party in whose favor a judgment was rendered was entitled to an execution at any time within five years, and after five years had elapsed, he was entitled to an execution on obtaining leave of the Court. Between April 8th, 1861, and April 2d, 1866, an execution could issue only within five years after the entry of the judgment. Since April 2d, 1866, an execution in all cases other than for the recovery of money may issue after five years, upon leave of the Court.

RIGHT TO EXECUTION WHEN ONCE BARRED.—If the right to an execution on a judgment in ejectment had expired by the lapse of more than five years on the second day of April, 1866, when the Act was passed providing for the issue of such executions, the passage of said Act did not revive the right to have an execution on such judgment.

ACT OF APRIL 2D, 1866, CONCERNING EXECUTIONS.—The Act of April 2d, 1866, granting the right to have executions issued on all judgments other than for the recovery of money more than five years after the entry of the judgment, is not retrospective. It applied only to judgments thereafter to be rendered.

APPEAL from the District Court, Third Judicial District, Alameda County.

The facts are stated in the opinion of the Court.

*W. W. Chipman,* for Appellant.

*Sharpstein & Hastings*, for Respondent.

By the Court, CROCKETT, J.:

In April, 1859, the plaintiff recovered a judgment against the defendant McAtee for the possession of the land in contest; on which judgment a writ of restitution, and afterwards an *alias* writ, were issued, both of which were returned unexecuted. About the month of January, 1860, the plaintiff died, out of this State; but letters of administration on his estate were not issued until June 10th, 1868, and on the 2d July, 1868, the administrator moved the Court for leave to issue a writ of restitution on the judgment. Notice of the motion was served on McAtee and on one Thomas Haley, who was in the actual possession of the premises. The motion was tried on the papers on file in the cause and upon affidavits; and the Court having denied the motion, the administrator has appealed. There are certain facts disclosed by the affidavits, which are not controverted; while certain other facts are denied by the adverse party. Both parties claim title under one Aughinbaugh, who, in January, 1855, conveyed the lot in controversy to the plaintiff Mann; but the deed was not recorded until March, 1858. In the meantime, in March, 1855, several months after the execution and delivery of the deed to Mann, Aughinbaugh conveyed to McAtee a larger tract, which included the premises in controversy, and the deed for which was immediately recorded; and McAtee having in some manner obtained the possession, Mann commenced an action in July, 1858, against him, to recover the possession, to which McAtee appeared and put in his defense. On the trial final judgment was rendered for the plaintiff in April, 1859, and it is on this judgment that the plaintiff asks for his writ of restitution. It further appears that whilst the action was pending, but before judgment therein, McAtee conveyed the premises in contest to one Robinson, who entered under his deed and

remained in possession until March, 1861, when he sold and conveyed said premises to one Robert Haley, who immediately placed Thomas Haley in possession as his tenant, and has ever since had the possession through his said tenant. It further appears that at or about the date of the deed from Robinson to Haley, the latter obtained from E. B. Mastick a quitclaim deed for the premises; but the nature of Mastick's claim or title does not appear. These facts are not disputed. But the plaintiff alleges, and his affidavits tend to prove, that at the date of the deed from Aughinbaugh to McAtee, Mann was in the actual and notorious occupation of the premises, and that McAtee had full and actual notice of the unrecorded deed to Mann. These facts are, however, denied by McAtee.

The motion is resisted on the ground that Haley is protected by the Statute of Limitations, and that after so long a possession, which is claimed to have been adverse, he cannot now be disturbed by the writ.

Section two hundred and fourteen of the Practice Act, as it originally stood, was as follows: "After the lapse of five years from the entry of judgment, an execution shall be issued only by leave of the Court, on motion. Such leave shall not be given, unless it be established by the oath of the party, or other proof, that the judgment, or some part thereof, remains unsatisfied and due."

This section was unconditionally repealed April 8th, 1861. (Stats. 1861, p. 116.) In 1866 it was revived in a modified form, as follows:

"In all cases, other than for the recovery of money, the judgment may be enforced or carried into execution after the lapse of five years from the date of its entry, by leave of the Court, upon motion, or by judgment for that purpose founded on supplemental proceedings." (Stats. 1866, p. 704.)

Section two hundred and nine of the Practice Act provides that "the party in whose favor judgment is given may, at any time within five years after the entry thereof, issue a writ of execution for its enforcement, as prescribed in this

Chapter;" and section two hundred and fifteen provides that on the death of the plaintiff, after judgment, an execution may issue, the same as if he were living, on the application of the executor, administrator, or successor in interest of the plaintiff. These are the only provisions of the Practice Act having any bearing on the question under discussion.

If McAtee had remained in possession up to this time, how would *his* right have been affected by these provisions? Could a writ on the judgment have been issued against him in 1868, under the conditions stated? As the law stood up to the 8th of April, 1861, (when section two hundred and fourteen was repealed,) the plaintiff was entitled, under section two hundred and nine, to issue his execution at any time within five years next after the entry of the judgment; and after five years had elapsed he was still entitled to issue it, under section two hundred and fourteen, on obtaining leave of the Court for that purpose; and it was the duty of the Court to grant the leave on being satisfied that some part of the judgment remained unsatisfied and due.

But after the repeal of section two hundred and fourteen in April, 1861, the only remedy of the plaintiff was that afforded by section two hundred and nine, which authorized the writ to issue within five years; and which, standing alone, must be construed as prohibiting it to issue after that period. So that, under that section, the plaintiff might have issued his execution at any time between April 5th, 1859, (the date of the judgment,) and April 5th, 1864. Without additional legislation, it is evident he would not have been entitled to an execution, even as against the original defendant, after the last named period. From that time until April 2d, 1866, when section two hundred and fourteen was revived in a modified form, as we have seen, the plaintiff manifestly had no right to an execution on the judgment. Did he acquire any new right by virtue of that section as revived in its modified form? We think not. In its amended form it was prospective in its operation, and applied only to judgments thereafter to be rendered. Statutes are never con-

strued to have a retrospective effect, unless they were obviously so intended; and there is nothing in this Act to indicate that intent. If it be applicable to this judgment, rendered seven years before the passage of the Act, it would equally apply to a judgment rendered in 1850.

We cannot believe that the Legislature contemplated anything of the kind; or that it intended, in reviving section two hundred and fourteen in its amended form to give new vitality to old judgments long since defunct, and the remedy on which had already been barred by the lapse of time. The repose of titles demands that we should not give to this statute a construction not required by its terms, and which would open up new fields of litigation, founded on stale proceedings in the Courts.

Order affirmed.