CORTÉS ET AL., DEMANDANTES APELADOS APELANTES, *v.* DÍAZ ET AL., DEMANDADOS APELANTES APELADOS.

APELACIÓN procedente de la Corte de Distrito de Arecibo en pleito sobre nulidad y reivindicación.

No. 2285.—Resuelto en febrero 5, 1923.

BIENES GANANCIALES — PRESUNCIÓN DE SER GANANCIALES — PRUEBA PARA DESTRUIR LA PRESUNCIÓN.—Cuando el marido o la mujer están en posesión de los bienes, uno u otro sin ninguna prueba documental del título, o a virtud de un título que por sí no es bastante para destruir la presunción de ser gananciales, el peso de la prueba recae siempre en quien niega el estado ganancial de la propiedad o afirma el carácter privativo de la misma. No es necesaria la prueba de la adquisición durante el matrimonio para establecer una base a fin de que pueda tener lugar la presunción legal de ser gananciales los bienes.

EJECUCIÓN DE HIPOTECA — JURISDICCIÓN — REQUERIMIENTO DE DEUDOR HIPOTECARIO.—Es necesario el requerimiento a los herederos de la esposa fallecida cuando ha sido ·requerido el esposo, demandado único, que estaba al frente de los bienes gananciales hipotecados un año antes de regir el Código Civil Revisado.

ID.—PRESCRIPCIÓN ORDINARIA—JUSTO TÍTULO PARA PRESCRIBIR.—Una escritura de venta judicial para ejecución de hipoteca, que emana de una corte sin jurisdicción para dictar la orden o decreto autorizando la venta o traspaso, es enteramente nula y no confiere el justo título que se requiere para la prescripción ordinaria.

Los hechos están expresados en la opinión.

Abogados de los apelados apelantes: *Sres. J. y M. Tous Soto.*

Abogados de los apelantes apelados: *Sres. S. Largé y A. Lens Cuena.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

La corte inferior declaró a los demandantes, nietos de un deudor hipotecario, dueños de ciertos condominios pro indivisos en dos fincas rústicas, y declaró además nulas dos escrituras de ventas otorgadas en la misma fecha, una por el marshal a una acreedora hipotecaria, compradora en la subasta, y la otra que fué otorgada por la acreedora hipotecaria a favor del hijo del deudor hipotecario y de su cónyuge premuerta.

Ambas partes, demandantes y demandados, establecieron apelación. El escrito de apelación archivado por los demandantes es únicamente en cuanto a que la sentencia no condena al demandado a rendir cuentas de los frutos y productos y porque no condena al demandado en costas.

Los demandantes no han radicado ningún alegato bien como apelantes o apelados, por lo que no es necesario considerar los méritos de su apelación.

La corte inferior en substancia consideró probado que en julio de 1891 Hermógenes Díaz, esposo de Mercedes Maldonado, inscribió como adquirida por compra cuatro años antes de la fecha de dicha inscripción, la posesión de la finca de 85 cuerdas descritas en la demanda; que posteriormente, en septiembre, de 1899, Hermógenes Díaz compró otra finca de 106 cuerdas, descrita también en la demanda, e inscrita en el registro de la propiedad; que en julio de 1901 Hermógenes Díaz constituyó hipoteca sobre estas dos fincas a favor de la sociedad Viuda de Martínez & Cia.; que en 1902 falleció intestada Mercedes Maldonado; que le sobrevivieron sus tres hijos legítimos Cristóbal, Luisa y Teresa Díaz y Maldonado que otros dos hijos legítimos, Amelia y Manuel Díaz Maldonado fallecieron con anterioridad a esta última fecha, habiendo dejado Amelia dos hijos legítimos, José Félix y Carmen Cortés Díaz; y Manuel otros dos llamados Manuel y Elisa Díaz González; que en abril de 1905, en escritura de disolución social de

"Viuda de Martínez y Ca.", el referido crédito hipotecario fué adjudicado a Juana de Dios Sofía Reventós; que en junio de 1907 dicha cesionaria estableció demanda en procedimiento sumario hipotecario contra Hermógenes Díaz como único demandado; que en el mismo mes se dictó orden de requerimiento contra Hermógenes Díaz; habiéndose dictado orden de venta en octubre y de ejecución con embargo de las dos fincas arriba mencionadas, en el mes de diciembre; que en marzo 7, 1908, se señaló el día 31 del mismo marzo, a las 3.30 p. m., sin decirse para qué habían sido fijados dicho día y hora, publicándose el edicto en un periódico local en los días 12, 19 y 26 de marzo, 1908; que la venta tuvo lugar en 31 de marzo siendo las fincas adjudicadas a la Sra. Reventós, única postora; que en 8 de mayo, 1908, el marshal de la corte de distrito, a nombre de Hermógenes Díaz vendió a la Sra. Reventós las dos fincas en cuestión por precio de once mil dólares, para abonarse a cuenta del crédito hipotecario; que en el mismo día la Sra. Reventós vendió a Cristóbal Díaz Maldonado las dos fincas así adquiridas; que las dos escrituras de ventas fueron otorgadas ante el mismo notario presentadas en el registro de la propiedad al mismo tiempo en el mes de febrero del año siguiente, corriendo dichos trámites cual si hubiese estado envuelto un solo contrato.

En el alegato a nombre de Cristóbal Díaz Maldonado se alegan como cometidos los siguientes errores:

"1. La Corte de Distrito de Arecibo erró al estimar bienes gananciales de la sociedad conyugal constituída por Hermógenes Díaz Latorre y Mercedes Maldonado, las dos fincas rústicas objeto del procedimiento hipotecario en cuestión, apreciando de ese modo, equivocadamente, la prueba practicada.

"2. Suponiendo gananciales los bienes hipotecados que fueron objeto de dicho procedimiento sumario, la Corte de Distrito de Arecibo erró al declarar que ha debido requerirse de pago en ese procedimiento, a las personas que forman la sucesión de Mercedes Maldonado, o sea sus herederos, no bastando a su juicio, el practicado personalmente a don Hermógenes Díaz Latorre, deudor y dueño de los

citados bienes, según el Registro de la Propiedad, en su residencia de la finca hipotecada, de Ciales, lugar de su domicilio.

"3. Dicha corte de distrito erró al declarar viciado de nulidad, sin valor ni eficacia alguna, el procedimiento hipotecario en cuestión, seguido por Juana de Dios Sofía Reventós contra Hermógenes Díaz Latorre, con respecto a los demandantes y en cuanto al supuesto derecho de éstos en las dos fincas hipotecadas y ejecutadas por ese procedimiento, así como respecto a la adjudicación y venta de tales fincas a la ejecutante Juana de Dios Sofía Reventós, y enajenación por ésta a Cristóbal Díaz Maldonado, estimando que los edictos y anuncios para la subasta de dichas fincas no se publicaron por el término de ley, o sea. por espacio de veinte días contados desde la publicación del anuncio, hasta el día de la subasta, cuando esos anuncios se hicieron y publicaron en forma legal, por mayor número de días, en tres sitios públicos del Distrito Judicial de Arecibo (Utuado, Ciales y Arecibo) o sea, del 7 al 8 de marzo de 1908 hasta el 31 del mismo mes y año, con sujeción al artículo 251 del Código de Enjuiciamiento Civil de Puerto Rico.

"4. Erró la corte inferior al declarar el derecho de condominio en común y pro indiviso de los demandantes en todas y cada una de las partes de las dos fincas, de 85 cuerdas y 106 cuerdas, descritas en el hecho segundo de la demanda, en la participación y proporción que atribuye a cada uno, como herederos de Mercedes Maldonado, en las fincas de referencia.

"5. Erró asimismo la corte inferior al declarar la nulidad de las ventas de dichas fincas otorgadas en 8 de mayo de 1908, la primera por el Marshal del Distrito de Arecibo, a nombre del ejecutado Hermógenes Díaz, a favor de Doña Juana de Dios Sofía Reventós, y la segunda, por ésta, a favor de Cristóbal Díaz Maldonado, en cuanto una y otra venta afectan, al supuesto condominio de los demandantes.

"6. La Corte de Distrito de Arecibo erró al no estimar la prescripción ordinaria de diez años alegada por el demandado Cristóbal Díaz Maldonado como modo de adquisición por él de las fincas compradas a Juana de Dios Sofía Reventós, por escritura pública de 8 de mayo de 1908 otorgada ante el Notario Manuel Paz Urdaz, no apreciando en consecuencia, la extinción de toda acción ejercitada de contrario.

"7. Erró también la corte inferior, por cuanto la sentencia apelada se ha dictado sin citar ni emplazar de la demanda, a los demandados Luisa Díaz Maldonado y Manuel Díaz y González, y sin

acusar la rebeldía de la demandada Teresa Díaz Maldonado, no habiendo ninguno de estos tres demandados comparecido en el juicio, ni de ningún otro modo en el pleito.

"8. La Corte de Distrito de Arecibo erró en fin, al no declarar las costas del pleito a cargo de los demandantes."

El abogado del acreedor hipotecario no alega sino un error que es substancialmente idéntico al séptimo señalamiento hecho por Díaz Maldonado. La proposición envuelta se somete sin argumentarse, como que es por sí evidente, no siendo necesario que se discuta o consigne por separado.

En un asiento hecho en el registro de la propiedad se consigna que Hermógenes Díaz, casado en 1891, acudió al juzgado municipal solicitando acreditar su posesión de la finca de 85 cuerdas, la cual fué debidamente inscrita. En la petición se alegaba la adquisición por compra y la posesión por un período mayor de cuatro años con anterioridad a esa fecha. Nada se dice de ningún derecho de dominio privativo. El asiento no tiene por objeto ser una inscripción de posesión de propiedad privativa.

Pero dicen los demandados: *Non constat* que Mercedes Maldonado fuera la esposa de Hermógenes Díaz bien en la fecha del asiento, o en la de la adquisición de las 85 cuerdas en el año 1887, o en el año 1889 en que fué comprada la finca de mayor cabida. Insisten en que no hay ninguna prueba de que Hermógenes estuviera en realidad casado antes de la fecha del expediente posesorio. El hecho no negado de que Mercedes Maldonado al ocurrir su fallecimiento en 1902 era la esposa de Hermógenes Díaz y la madre de sus hijos legítimos incluso el demandado Cristóbal Díaz Maldonado, se trata de hacer desaparecer indicándose una posible legitimación mediante un matrimonio *in articulo mortis* o una ceremonia celebrada en cualquier momento después del nacimiento de tales hijos.

La teoría del primer señalamiento es que sólo surge la

presunción de bienes gananciales mediante prueba del matrimonio en o antes de la fecha de su adquisición.

Esa fecha, por supuesto, es un elemento vital al establecer el hecho positivo de si determinada propiedad inmueble adquirida por compra es una propiedad privativa o ganancial.

El artículo 1314 del Código Civil enumera las varias clases de bienes propios. El 1316 determina como bienes gananciales, entre otros, "los adquiridos por título oneroso durante el matrimonio a costa del caudal común, bien se haga la adquisición para la comunidad, bien para uno solo de los esposos." Tres elementos hay aquí envueltos, primero, un título oneroso, segundo, la adquisición durante el matrimonio, y tercero, los fondos o bienes conyugales como origen del precio de compra. Pero el artículo 1322 no expresa que todos los bienes adquiridos durante el matrimonio se presumen adquiridos a título oneroso, o a costa del caudal común, ni expresa tampoco lo contrario de una u otra de estas proposiciones, aunque cada una es cierta como corolario de la amplia definición del estatuto. No hay más razón para exigir prueba de cualquiera de estos elementos que la que puede haber para exigirla de una u otra, o de ambas de las otras dos, como base para la presunción. Si se prueba terminantemente que existen los tres elementos, entonces no se presume meramente que la propiedad es ganancial. En realidad lo es. La presunción legal descansa en el hecho de la posesión y no en la prueba de que la presunción, o cualquiera de sus elementos, es realmente cierta. Lo que sí expresa el artículo 1322, *supra,* es que "todos los bienes del matrimonio"—queriendo decir todos los bienes que se encuentran en posesión de uno u otro de los esposos—"se reputarán gananciales mientras no se pruebe que pertenecen privativamente al marido o a la mujer."

Dado el hecho de tener la posesión el marido o la mujer,

uno u otro sin ninguna prueba documental del título, o a vir-
tud de un título que por sí no es bastante para destruir la
presunción, el peso de la prueba recae siempre en quien niega
el estado ganancial de la propiedad o afirma el carácter pri-
vativo de la misma.

Hemos resuelto hace poco tiempo, después de una detenida
consideración, que en una información posesoria un promo-
vente que es casado puede establecer, de ser posible, y no
obstante la presunción legal, una posesión basada en un tí-
tulo aparentemente válido de ser privativa la propiedad; y
que al presentarse prueba clara y convincente en este sentido
puede la corte determinar la naturaleza *prima facie* de tal
posesión. *Sandoval* v. *El Registrador,* 30 D. P. R. 361.
Véase también el caso de *Delgado* v. *El Registrador,* 30 D.
P. R. 483. En el caso de Sandoval la prueba era una escri-
tura de una propiedad adquirida con anterioridad al matrimo-
nio, en la cual el notario daba fe del estado civil de las partes
y de su conocimiento personal de las mismas. Pero no ci-
tándose autoridades no estamos en condiciones de prestar
asentimiento a la proposición de que es necesaria la prueba
de la adquisición durante el matrimonio para establecer una
base a fin de que pueda tener lugar la presunción legal de
ser gananciales los bienes.

Y aunque los matrimonios celebrados *in artículo mortis*
y la legitimación de los hijos no son desconocidos, tales ca-
sos esporádicos no son sino excepciones que sirven para acla-
rar la regla. No podemos asumir con los apelantes que
esta posibilidad que más bien es remota sea realmente el
hecho en el presente caso.

Al argumentar el segundo señalamiento declaran los ape-
lantes que aceptan sin discusión la doctrina establecida por
esta corte en el caso de *Arvelo* v. *Banco Territorial y Agrí-
cola,* 25 D. P. R. 728, pero tratan de diferenciarlo debido a
la circunstancia de que en el presente caso el marido, dueño
según el registro y deudor hipotecario de la propiedad en

cuestión, estaba vivo en la fecha del procedimiento sumario, y por tanto que no era necesario ningún requerimiento a los herederos de la esposa fallecida.

Hay ciertos particulares de este caso que no fueron tra-tados tan ámpliamente como pudieron hacerlo los deman-dantes en el juicio, y ciertos motivos de distinción la base de los cuales pudo haberse establecido más cuidadosamente por los demandados en la corte inferior. Pero no dispone-mos de tiempo para hacer una investigación independiente de cuestiones que no han sido suscitadas específicamente por los apelantes y que no están sostenidas por sólido razona-miento o citas de autoridades. La resolución de tales cues-tiones puede dejarse hasta que sean debidamente someti-das para su decisión.

La mera circunstancia de que aquí el esposo sobreviviera a la esposa mientras que en el caso de Arvelo fué la esposa la que sobrevivió al marido, no es bastante para diferenciar el presente caso en cuanto a los hechos. Aparte de la sim-ple cuestión de administración, hay poca o ninguna diferen-cia entre el interés de los respectivos esposos en los bienes pertenecientes a la sociedad conyugal. Es verdad que en la fecha de la hipoteca, un año antes de la revisión del Código Civil, no era necesario la firma y el consentimiento expreso de la esposa. Pero no es cierto que el marido era el único y exclusivo dueño con título inscrito y deudor. Tanto la ins-cripción como la hipoteca revelaban que él era casado, y por tanto que la propiedad era ganancial. La dueña con título inscrito y deudora era la sociedad conyugal. Y a la muerte de cualquiera de los esposos una mitad indivisa en todos los bienes de la comunidad, sujeta solamente a ciertas contigen-cias que pudieran o no surgir en el curso de la liquidación, pasa en seguida a los herederos del cónyuge fallecido.

La alegación de que el requerimiento de pago es una mera cuestión de procedimiento y no jurisdiccional no requiere seria consideración. La contestación a esto puede verse en

el caso de *Arvelo* v. *Banco, supra,* y en el de *López Comas*
v. *Quiñones,* 30 D. P. R. 342.

Toda vez que la publicación del edicto anunciando la
venta, por regular que fuera no podía suplir la falta de ju-
risdicción sobre la persona, el error apuntado en el tercer se-
ñalamiento, de haberse cometido, no perjudicaba.

Las premisas envueltas en el cuarto y quinto señalamien-
tos son secuela de las proposiciones anteriormente sometidas
y no requieren ulterior discusión.

Para sostener el sexto señalamiento se insiste algo en la
opinión emitida por el anterior Juez Presidente de esta corte
en el caso de *Martorell* v. *Ochoa,* 25 D. P. R. 759.   La parte
substancial del texto citado está contenida en el párrafo cuarto
del sumario donde se dice que una escritura ''por la que la
madre en ejercicio de la patria potestad sobre sus menores
hijos los demandantes, y con autorización del Tribunal de
Distrito de San Juan, que no era el de su domicilio, conce-
dida en 28 de abril de 1902, vendió a la sociedad demandada
los condominios expresados, es un título justo, verdadero y
válido para la prescripción: justo, por ser de compraventa,
bastante para transferir el dominio; verdadero, porque no
ha sido argüido de falso; y válido por ser perfecto en sus
requisitos externos y aún en las condiciones internas que afec-
tan a su vida y existencia, con arreglo al artículo 1226 del
Código Civil, pues hubo materia del contrato, consentimiento
y causa del mismo.''

Sin embargo, de un examen cuidadoso de esa opinión se
verá que el título en cuestión se consideró que era sólo anu-
lable y no absolutamente nulo.   No existe ningún conflicto
entre el criterio allí sustentado por el Juez Presidente y la
proposición que de modo más terminante se enuncia tanto en
la opinión concurrente como en las disidentes emitidas en el
mismo caso, al efecto de que una escritura que emana de una
corte sin jurisdicción para dictar la orden o decreto autori-

zando la venta o traspaso es enteramente nula y no confiere ningún título aparente.

En el presente caso el márshal, como aparece de la faz de la propia escritura, compareció y actuó a nombre y en representación de Hermógenes Díaz. El documento no tiene por fin traspasar el derecho, título o interés de ninguna otra persona. En cuanto a estos demandantes no era ''justo por ser bastante para transferir el dominio.'' Respecto a ellos no hubo consentimiento ''dado por su representante legal,'' o de otro modo. Puesto que la corte nunca adquirió jurisdicción sobre estos demandantes la orden de venta, la venta misma y las escrituras que ahora se alega que constituyen un ''justo título,'' fueron y son completamente nulas en tanto se trata del condominio de dichos demandantes. Siendo esto así, no puede haber cuestión alguna de título aparente.

Los apelantes no discuten el elemento de buena fe con gran amplitud sino que parecen invocar solamente la presunción legal en relación con un alegado derecho para aceptar a ciegas y con toda confianza cualquier traspaso que proceda de una corte de justicia como resultado de los procedimientos judiciales ante ella seguidos. Para nada se menciona la cuestión de parentezco, proximidad de residencia, o de alguna prueba que arroje luz sobre el punto de tal conocimiento como el que pueden haber tenido los apelantes de los hechos que no constan del registro. No se alega que no hay prueba o que ésta no es suficiente en este sentido. Aparte de una mera referencia a la presunción de que existe buena fe, ni siquiera se sugiere que se ignoran tales hechos. En vista de las circunstancias y a falta de algún título aparente, no es necesario considerar el punto relativo a la buena fe, si bien el caso de *López Comas* v. *Quiñones, supra,* puede tener cierta aplicación al particular.

En cuanto al séptimo señalamiento será bastante con decir que el alegato de los apelantes no demuestra que las mencionadas personas fueran partes necesarias, o que los ape-

lantes han sido perjudicados de algún modo por la omisión, si la hubo, de la corte inferior al ordenar por iniciativa propia la expedición de un emplazamiento a los demandados que no hubieran sido ya citados, o anotar la rebeldía de cualquier demandado que hubiera dejado de comparecer después de notificado el emplazamiento.

En el octavo señalamiento no hay razonamiento y la proposición que en él se consigna descansa en la falsa hipótesis de que la corte inferior debió haber desestimado la demanda.

Debe confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf, Aldrey y Franco Soto.