·CAPÓ, PLAINTIFF AND APPELLANT, v. PIÑEIRO ET AL.,
DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Guayama in an Action
to Annul Proceedings.

No. 3124.—Decided December 22, 1924.

JUDGMENT—MARRIED WOMAN—CONNIVANCE.—A personal judgment against a mar-
ried woman on a contract which she is not authorized by statute to make is
void absolutely and a nullity wherever it may come in question, if it is
alleged and proved that the judgment was the result of a connivance between
the plaintiff and the defendant and her husband in violation of the rights
of the party praying for the annulment.

The facts are stated in the opinion.

*Mr. C. Domínguez Rubio* for the appellant.

*Messrs. A. Porrata Doria* and *T. Bernardini* for the ap-
pellees.

MR. JUSTICE FRANCO SOTO delivered the opinion of the
court.

This is an action for the annulment of certain proceed-
ings in an action of debt brought by Successors of Tomás
Cano & Co. against Daría Alvarez, including the sale made
by the marshal to the plaintiff firm in satisfaction of their
claim of the property on which attachment and execution
were levied. It is also prayed in this action that the court
adjudge that the only attachment affecting the said prop-
erty is the attachment levied in the action brought by the
plaintiff-appellant against Zenón Piñeiro, the husband of the
other defendant, Daría Alvarez.

Successors of Tomás Cano & Co. demurred to the com-
plaint, but none of the defendants answered it, wherefore
a default judgment was entered, albeit the court finally
dismissed the complaint without special imposition of costs.

The plaintiff alleges substantially the following: That
defendants Zenón Piñeiro and Daría Alvarez are husband
and wife; that on September 9, 1913, the plaintiff brought
an action in the District Court of Guayama against Zenón
Piñeiro to recover $1,168.76; that in order to secure the

effectiveness of the judgment an attachment was levied on
September 10, 1913, on a certain urban property and re-
corded in the registry of property; that on September 15,
1913, the defendant firm of Successors of Tomás Cano & Co.
brought an action in the Municipal Court of Guayama
against Daría Alvarez to recover the sum of $134.94 and
attached the same property already attached by the plain-
tiff as the property of the defendant; that when the ac-
tion was brought against Daría Alvarez by the co-defendant
firm the said Daría Alvarez was the wife of Zenón Piñeiro,
who was not made a party to the action; that Daría Al-
varez, by agreement with her husband, did not defend in
the action brought against her and therefore a default judg-
ment was entered against her on October 2, 1913; that Ze-
nón Piñeiro defended in the action brought against him by
the plaintiff-appellant and resorted to all available dilatory
tactics, while the action brought against his wife was not
interrupted by her and he made no effort to become a party
thereto; that on October 23, 1913, the judgment rendered
against Daría Alvarez became final and a writ of execution
was issued and the property was sold at public auction to
the plaintiff firm in satisfaction of their judgment although
the plaintiff-appellant had given notice of the first attach-
ment to the marshal of the municipal court; that the said
marshal executed the deed of judicial sale on November
19, 1923, but the notice of the first attachment had not been
mentioned in the notices of sale published and was not
mentioned in the deed of sale; that on May 20, 1914, after
all due process in the action brought by the plaintiff-appel-
lant against Zenón Piñeiro, judgment was rendered for the
amount sued for and Piñeiro gave notice of an appeal which
was dismissed on June 4, 1915, because of his failure to
perfect it; that notwithstanding its dismissal, the fact was
not entered in the record and the plaintiff learned of the
date of its dismissal when on a recent date he moved for
its dismissal; that the judgment in the said case could not

be executed because of the sale of the property, for the spouses Piñeiro-Alvarez had no other property subject to execution.

The appellant assigns in his brief various errors, dividing them into two groups as follows:

"First group.—1.—The court erred in holding in this case that the action brought by Successors of Tomás Cano & Co., Ltd., against Daría Alvarez to recover for materials purchased from the said firm for the construction of a house, she being married to Zenón Piñeiro, was properly brought and that the judgment could be satisfied out of community property.

"2.—The court erred in giving validity to the contract under which materials for building a house were purchased by Daría Alvarez from Successors of Tomás Cano & Co. while she was married, this fact being known to the said firm.

"3.—The court erred in considering as separate property of Daría Alvarez the house built during her wedlock, and in considering it subject to execution under the judgment rendered against her, even assuming that she could be sued alone, in the absence of evidence to show that it was her separate property and came within the exceptions to the general rule stated in section 73 of the Code of Civil Procedure.

"Second group.—4.—The court erred in holding that the attachment levied by Capó was not effective and could not be considered as creating rights preferable to the attachment levied by Cano.

"5.—The court erred in holding that because of the mere fact that Capó brought another action to make effective his rights under the previous judgment his unexecuted attachment in the first suit lost its validity and efficacy."

These assignments may be reduced to two questions. The first group refers to the nullity of the proceedings in the municipal court and the second to the preference of the attachments levied on the property sold under execution. Both questions may be considered together.

The judicial sale originated from the second attachment levied by Successors of Tomás Cano & Co. in their action against Daría Alvarez. The appellant seems to have a fixed idea that when his first attachment on the property

was levied and recorded this was sufficient to make his right prevail absolutely over the second attachment. However, the mere record of an attachment does not give a preferred right. It only gives the creditor preference over debts contracted after it is recorded, as provided in article 44 of the Mortgage Law and subdivision 5 of section 1824 of the Civil Code, which read as follows:

"Art. 44.—A creditor who obtains the entry of a cautionary notice in his favor under the circumstances enumerated in subdivisions 2, 3 and 4 of article 42, shall have preference, only with regard to the property against which the notice appears, over those who have against the same debtor another claim contracted subsequently to such entry."

"Sec. 1824.—(As amended by act of March 10, 1910, page 124, and act of March 9, 1911, page 155).—With regard to certain real property and rights on realty of the debtor, the following shall have preference:

"  *      *      *      *      *      *      *

"5.—Credits, of which a cautionary notice has been made in the registry of property by virtue of a judicial mandate, by reason of attachments, sequestrations, or execution of judgments, with regard to the property entered therein and only with regard to subsequent credits."

Galindo, in his Commentaries on the Mortgage Law, volume 2, pp. 479–480, says, among other things, the following:

"In considering the effects of a cautionary notice it is necessary to distinguish carefully between those given to it by the Mortgage Law and those created by the civil law. It should not be believed that because the said article says that one who obtains the entry shall have preference over subsequent creditors he has not such preference also over prior creditors if his right is better. His preference over prior creditors remains unchanged; it neither increases nor decreases. Against them he will have available the weapons given to him by the civil law, and against the later those given to him by article 44 of the Mortgage Law.

"If a different rule were established the result would be, as stated in the preamble, that among many creditors of the same class he would be in the best position who is the most exacting; the less tolerant; the one who by good or evil means might acquire the

most accurate knowledge concerning the financial condition of the debtor, or he who might have the most diligent attorney.

" "       *       *       *       *       *       *       *

"Although it is clear that the cautionary notice gives preference only to the rights of the creditor who obtains it over the credits acquired after its entry and that this preference is understood to cover only the properties to which the entry refers and not others that the debtor may have or may acquire, yet it is not so easy to determine the preference between the different creditors when the notice is converted into a record by virtue of a final judgment.

"Among the many illustrations that might be given we shall cite only the two which are most frequently met with in practice:

"1.—One creditor attaches the property of his debtor and records his lien, after which the proceedings are suspended. Subsequently the debtor contracts another debt and the new creditor also levies and records an attachment, the proceeding is prosecuted to judgment and the property is sold to him. Does the first creditor preserve the rights acquired by his record?

"We are of the opinion that the first creditor who recorded his lien preserves all his rights thereunder and may enforce them in court; for although the second creditor acquired the property and recorded it first, the judicial sale was made with knowledge of the lien to which the property was subject."

The present case is similar to the illustration given by Galindo in so far as two actions were brought and two successive attachments were levied on the same property; but the decision of the question would depend upon the validity of the first attachment, which we shall consider later, and the preference claimed by the defendant under the second attachment.

The appellant maintains, however, that he does not consider the question very important when so presented, and emphasizes the contention that as he has a judgment in his favor against the party who really should have been the defendant in the second action, his main purpose is to obtain the annulment of this last proceeding because the defendant's husband was not made a party to it. This aspect of the case seems to be very important, especially if taken in connection with the nature of the property attached.

There is a strong presumption from the evidence that the said property is community property, and the burden was on the defendants to destroy that presumption. The defendants did not answer the complaint and did not appear at the trial, but Francisco Berreteaga, one of the managing partners of Successors of Tomás Cano & Co., was called as a witness and although he testified that Daría Alvarez bought lumber on credit for building the house and that she made partial payments thereon, he also said that the house was built by the Piñeiro-Alvarez spouses and that the husband had an account with the firm. There is no other evidence about the character of the property. Not even the registrar of property threw any light on this question, for he refused to record the attachments in both actions because the property did not appear of record in the name of either of the spouses. The doctrine laid down by this Court in the case of *Cortés et al. v. Díaz et al.,* 31 P.R.R. 433, is applicable to this case. In that case the court said:

"When either husband or wife is in possession of property without a written title thereto, or under a title which of itself is not sufficient to destroy the presumption that it is community property, the burden of proof is on the person who denies the community character of the property or affirms that it is separate property. Proof of acquisition during wedlock is not necessary to establish a basis for the presumption that the property is community property."

It seems clear that if the property belonged to the conjugal partnership of the spouses Piñeiro-Alvarez, the judgment rendered by the municipal court against Daría Alvarez could not be enforced against the attached property because of the rule established in the case of *Matheu v. Murillo et al.,* 25 P.R.R. 304. If the property is community property it cannot be applied to the payment of a claim against the wife only. The basis of this rule is the statute itself. Under section 54 of the Code of Civil Procedure it was necessary to join the husband. This section estab-

lishes the said general rule and the. following exceptions:
If the action concerns her separate property; if the action
is one between husband and wife, or if she is living sepa-
rately from him because of his desertion.  Otherwise the
general rule as stated in section 159 of the Civil Code pre-
vails to the effect that the husband is the natural repre-
sentative of the conjugal partnership and he alone has ca-
pacity to sue and be sued as such representative, or, in any
event, it is necessary that he be a party to every action that
may affect the conjugal partnership or the community prop-
erty.  In McKay on Community Property, 440, the follow-
ing is said:

"The law of community property presents but few special rules
of pleading and practice; in general, during the existence of the
marital partnership, the husband is the sole legal representative of
the affairs of the community; the debts of the community are his
debts; its property is under his sole control and dominion; he
alone sues on a community debt or obligation, and he alone repre-
sents the community interests as defendant; the wife's interest in
the community property is during the marriage, represented by the
husband, *and by the husband alone.*  Community property cannot
be sold in judicial proceedings nor an adjudication made binding.
upon it, or enforceable against it, except in a case where the hus-
band is a party or legally represented."

"Sections 578 and 579 of the Code of Civil Procedure which
authorize the rendition of judgments against one or more parties
apply only to the parties jointly liable and do not authorize the
rendition of judgment against the wife alone when she is sued and
her husband is a necessary party."  *McDonald* v. *Porsh,* 136 Cal.
301.

It being demonstrated that in the action brought in the
Municipal Court of Guayama by Successors of Tomás Cano
& Co. against Daría Alvarez it was necessary to join the
husband or else the judgment rendered could not be enforced against the attached property, the question then is
whether the said action can be collaterally attacked by means
of the action brought by the plaintiff-appellant.  Of course,
if there were no doubt of the effectiveness and validity of

the first attachment levied in the suit brought by the plaintiff against Piñeiro, the question would be easier to solve. Prima facie, the rule that the first in time is the first in right would decide the point and defendants Tomás Cano & Co. would have to abide by the first lien, or redeem it, or make an issue of their right of preference. *Santiago v. Capó et al., ante,* page 346. But we doubt the efficacy of the first attachment because of the lapse of more than five years since the judgment which it was to secure became final. It is of no importance that the judgment itself served as a basis for another action in which Piñeiro was adjudged for a second time to pay the sum of $1,168.76. The new judgment could not make valid an attachment which had become void, as a matter of procedure, by provision of law. Section 243 of the Code of Civil Procedure reads as follows:

"In all cases other than for the recovery of money, the judgment may be enforced or carried into execution after the lapse of five years from the date of its entry, by leave of the court, upon motion, or by judgment for that purpose, founded upon supplemental proceedings."

This statute does not apply to judgments for the recovery of money. It is taken from the California statutes of 1886, p. 704, and not from the more recent amendment made to section 685 of the Code of Civil Procedure, which makes it applicable to money judgments. *Maun v. McAtee,* 37 Cal. 13; *Harrier v. Bassford,* 145 Cal. 531. But the invalidity of the attachment because of failure to act within a given period of time did not imply the invalidity of the judgment in this case, for the appellant could rely on it in support of the new action and recover, as he did, a second judgment for the amount specified in the first. The plaintiff is a judgment creditor of Zenón Piñeiro, the husband of Daría Alvarez, and he has the legal interest necessary to assert in the name and stead of the debtor all of the

rights of the latter, except those of an inherent personal character, inasmuch as there is no other property than the property attached. Section 1078 of the Civil Code provides as follows:

"Creditors, after having attached the property of which the debtor may be in possession, in order to collect all that is due them, may exercise all the rights and actions of the latter for the same purpose, excepting those inherent in his person; they may also impugn the acts which the debtor may have performed in fraud of their right."

The rule being thus established, it seems still necessary to determine whether in this particular case it is an inherent right of Piñeiro to sue for the annulment of the action brought in the municipal court because of the failure to make him a party thereto together with his wife. In commenting on section 1111 of the old Civil Code, which is equivalent to section 1078, *supra,* Scaevola says nothing definite in this regard, but at page 592 of volume 19 of his commentaries he says that the French jurisprudence has adopted various rules concerning the said provision, among them, that the creditors of a married woman who contracted without the consent of her husband may bring in her name an action for the annulment of the contract. The American authorities seem to be in conflict on this point. While in many states it is held that a judgment against a married woman is in no case void, but that when it is erroneous because based on a contract which she had no authority to make, it may be set aside on appeal or by some other appropriate method; yet the courts of other states have not agreed to this rule and have held a personal judgment against a married woman on a contract which she is not authorized by statute to make to be absolutely void and a nullity wherever it may come in question. 13 R.C.L. 1456. However, in those states in which the latter doctrine is not upheld the courts invoke in support of the validity of the

judgment the protection of innocent third persons whose equally respectable rights might be compromised. This reason does not seem to apply to this case. Successors of Tomás Cano & Co. knew that Daría Alvarez was the wife of Zenón Piñeiro, the debtor in the first action. They also knew, as shown by the evidence, that the house attached was community property and in any event the presumption that it was such was binding upon them. They also knew by recording their second attachment after the first had been recorded and was in full effect that the property was the same property and that such judgment as they might recover could not be enforced against the said property, applying the doctrine in the case of *Matheu* v. *Murillo*, *supra*. And finally the very inactivity of Daría Alvarez in the action in the municipal court in permitting a default judgment to be rendered against her, and also of her husband in failing to come to her defense while he was very active in the first suit and exhausted all the resources of defense, are all circumstances which induce a suspicion of connivance between the spouses Piñeiro-Alvarez and Successors of Tomás Cano & Co. for the purpose of defrauding the plaintiff, which divests of the condition of innocent third persons the said Successors of Tomás Cano & Co. who were parties to the second suit and under the second attachment became the owners of the property by virtue of its sale to them.

For all of the foregoing reasons the judgment appealed from must be reversed and substituted by another adjudging the nullity of the deed of judicial sale executed on November 19, 1913, by the marshal of the Municipal Court of Guayama in favor of the Successors of Tomás Cano & Co., the defendants to pay the costs.

*Reversed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Hutchison concurred.