### CAPÓ, DEMANDANTE Y APELANTE, *v.* PIÑEIRO ET AL., DEMANDADOS Y APELADOS.

No. 3124.—*Visto:* Noviembre 13, 1924. *Resuelto:* Diciembre 22, 1924.

NULIDAD—SENTENCIA QUE PUEDE ANULARSE POR ATAQUE COLATERAL.—Una sentencia personal contra una mujer casada sobre un contrato que el estatuto no le da facultad para celebrarlo, es absolutamente nula y su nulidad puede atacarse dondequiera que se presente la cuestión, cuando se alega y prueba que tal sentencia fué el resultado de una connivencia entre la demandante y la demandada y su esposo para perjudicar los derechos de la parte que pide la nulidad.

SENTENCIA de *Gabriel Castejón,* J. (Guayama), declarando sin lugar la demanda, sin costas. *Revocada* y dictada otra en su lugar, con costas.

*C. Domínguez Rubio,* abogado del apelante; *A. Porrata Doria* y *T. Bernardini,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

En este caso se pide la nulidad de cierto procedimiento en cobro de dinero seguido por Sucs. de Tomás Cano y Compañía contra Daría Alvarez, y como consecuencia, la nulidad de la venta que otorgó el márshal a la demandante adjudicando en pago la finca que fué objeto de embargo y ejecución, solicitándose además en este procedimiento que se declare que el único embargo que afecta a la mencionada finca es el que se trabara en el pleito seguido por el demandante-

apelante contra Zenón Piñeiro, esposo de la otra demandada Daría Alvarez.

La demanda fué excepcionada por uno de los demandados, Sucs. de Tomás Cano y Compañía, pero ninguno de los demandados contestaron la demanda, por lo que el pleito se falló en rebeldía, si bien la corte inferior en definitiva declaró sin lugar la demanda sin especial condenación de costas.

El demandante, para sostener su petición, sustancialmente, alega: que los demandados Zenón Piñeiro y Daría Alvarez son esposo y esposa y que el día 9 de septiembre de 1913 demandó ante la corte de distrito de Guayama a Zenón Piñeiro en cobro de la suma de $1,168.76; que para asegurar la efectividad de la sentencia, embargó el 10 de septiembre de 1913 cierta finca urbana, verificándose la anotación del mismo en el registro de la propiedad; que en 15 de septiembre de 1913 la co-demandada Sucs. de Tomás Cano y Compañía dedujo demanda ante la Corte Municipal de Guayama en cobro de dinero, contra Daría Alvarez, en reclamación de la suma de $134.94, embargando la misma finca como de la propiedad de la demandada, la que había sido previamente embargada por el demandante; que a la fecha de la demanda que contra Daría Alvarez entablara la mercantil codemandada, la citada Alvarez era casada con Zenón Piñeiro, quien no fué hecho parte en el pleito; que Daría Alvarez de acuerdo con su esposo, no se defendió en el pleito que contra ella fué establecido, y por este medio se dictó sentencia en rebeldía contra la misma el 2 de octubre de 1913; que Zenón Piñeiro se defendió en el pleito que contra él se presentó por el demandante-apelante, tratando por todos los medios de dilatar el procedimiento, mientras el iniciado contra su esposa no fué interrumpido por ella, ni tampoco él hizo diligencia alguna para hacerse parte en dicho pleito; que el 23 de octubre de 1913, por ser firme la sentencia dictada en el pleito contra Daría Alvarez, se libró orden de ejecución y la finca fué subastada, adjudi-

cándose en pago de la deuda a la mercantil·demandante, no sin antes dar aviso el demandante-apelante del primer embargo al márshal de la corte municipal; que dicho márshal procedió a otorgar la escritura de venta judicial en 19 de noviembre de 1923 sin que hiciera constar el aviso del primer embargo en los edictos anunciando la subasta ni en la escritura de venta; que en mayo 20, 1914, después de todos los incidentes promovidos en el pleito que el demandante-apelante había entablado contra·Zenón Piñeiro, se dictó sentencia por la cantidad reclamada y contra la misma Piñeiro estableció apelación, la que fué desestimada en junio 4, 1915, por no haberse perfeccionado el recurso; que no obstante la desestimación, no constaba antecedente alguno en los autos y el demandante vino a enterarse de la fecha de dicha desestimación al intentar el desistimiento en fecha reciente; que la sentencia en dicho caso no pudo ejecutarse porque debido a la subasta que se había verificado del inmueble embargado, los esposos Piñeiro-Alvarez carecían de otros bienes en que pudiera hacerse efectiva.

El apelante señala en su alegato diversos errores que comprende en dos partes, a saber:

"Primera parte:—1. La corte erró al declarar en este caso que la acción seguida por Sucs. de Tomás Cano & Co. S. en C. contra Daría Alvarez, por efectos tomados a dicha mercantil para la construcción de una casa, estando ella casada en esta fecha con Zenón Piñeiro, es una acción bien dirigida y la sentencia dictada podía ejecutarse sobre bienes gananciales.

"2. La corte erró al conceder validez al contrato de compraventa de efectos para fabricar una casa, adquiridos por la Daría Alvarez en la mercantil Sucs. de Tomás Cano & Compañía, cuando ella era casada·y la citada mercantil lo sabía.

"3. La corte erró al considerar como propiedad privativa de Daría Alvarez la casa construída durante su matrimonio y sujeta a la ejecución de la sentencia dictada en su contra—aún en la hipótesis que ella hubiera podido ser demandada sola—a falta de prueba que demostrara que dicha propiedad era privativa y ella se ·encontraba dentro de la excepción de la regla general del art. 73 del Código de Enj. Civil.

"Segunda parte:—4. La corte erró al declarar que el embargo practicado por el Sr. Capó carecía de valor y no podía sostenerse como creador de derechos preferentes al embargo trabado por Cano.

"5. La corte erró al declarar que por el mero hecho de que Capó presentara otra acción, para hacer valer su derecho en la sentencia anterior, su embargo aún sin ejecutar en pleito primero había perdido su fuerza y validez."

Estos varios errores, sin embargo, pueden reducirse a dos cuestiones: la primera parte se refiere a la nulidad del procedimiento seguido ante la corte municipal y la segunda a la prelación de los embargos trabados en la finca objeto de la venta judicial, y las mismas pueden considerarse conjuntamente.

La venta judicial se origina del segundo embargo que se practicó por Sucs. de Tomás Cano y Compañía en su reclamación contra Daría Alvarez. El apelante parece tener fija la idea de que obtenido y anotado en primer lugar su embargo, sobre la misma finca, esto era bastante para que prevaleciera en absoluto su derecho sobre el segundo embargo. No obstante, la mera anotación no da un derecho preferente. Ella solamente concede al acreedor la prelación sobre los créditos contraídos con posterioridad a la anotación, según así se dispone en el art. 44 de la Ley Hipotecaria y su concordante el 1824 del Código Civil, inciso 5º. Estos artículos dicen lo siguiente:

"Art. 44.—El acreedor que obtenga anotación a su favor en los casos de los números 2º, 3º y 4º del artículo 42, será preferido, en cuanto a los bienes anotados solamente, a los que tengan contra el mismo deudor otro crédito contraído con posterioridad a dicha anotación."

"Art. 1824.—(Enmendado según la ley de 10 de marzo de 1910, pág. 126). Con relación a determinados bienes inmuebles y derechos reales del deudor, gozan de preferencia:

*          *          *          *          *          *          *

"5. Los créditos preventivamente anotados en el registro de la propiedad en virtud de mandamiento judicial, por embargo, secuestros o ejecución de sentencias, sobre los bienes anotados, y sólo en cuanto a créditos posteriores."

Comentando Galindo el artículo 44 de la Ley Hipotecaria en su obra sobre la misma, tomo 2, págs. 479–480, entre otras cosas dice lo que sigue:

"En los efectos de la anotación hay que distinguir cuidadosamente los que le atribuye la L. H. y los que nacen del derecho civil. No se crea que por decir el artículo que el que obtenga anotación es preferido a los acreedores posteriores, no lo es también a los anteriores, si es mejor su derecho: el que le asista contra éstos, permanece incólume, ni acrece ni decrece. Contra ellos usará de las armas que le proporcionan las leyes civiles: contra los posteriores, de las que por el artículo 44 le suministra la Hipotecaria.

"Si se estableciera otra regla, resultaría, como dice la *Exposición de motivos,* que entre diversos acreedores en idéntico caso, sería de mejor condición el más exigente, el que guardara menos consideraciones, el que por mejores o peores medios adquiera noticias más exactas del verdadero estado de la fortuna del deudor, o el que tuviera un procurador más diligente.

*       *       *       *       *       *       *

"Si bien es llano que la anotación sólo da preferencia al derecho del acreedor anotante, contra los créditos adquiridos después de la anotación, y que esta preferencia se entiende sólo sobre los bienes anotados y no sobre otros que tenga o pueda adquirir el deudor, no lo es tanto resolver la preferencia que entre sí tengan los acreedores, cuando la anotación se convierta en inscripción en virtud de sentencia ejecutoria.

"Entre los casos que pudieran citarse, nos ceñiremos a los dos que con más frecuencia ocurren.

"1º—Un acreedor ejecuta al deudor y anota el embargo, y el procedimiento se paraliza; con posterioridad a la anotación, el deudor contrae otra deuda, y el nuevo acreedor ejecuta también y embarga y anota y sigue el procedimiento hasta sentencia, adjudicándosele la finca embargada. ¿Conserva el primer acreedor los derechos adquiridos por la anotación?

"Opinamos que el anotante, primer acreedor, conserva todos los derechos que le confirió la anotación y que hará valer ante los tribunales; pues si bien el segundo acreedor adquirió e inscribió antes, la compra judicial se hizo ya con conocimiento de la responsabilidad a que estaba sujeta la finca."

El presente caso se asemeja al de Galindo en sentido de que se han establecido dos procedimientos y en orden suce-

sivo se han practicado dos embargos sobre la misma finca, pero la cuestión dependería para resolverse de la validez del primer embargo, como luego examinaremos, y de la preferencia que alegara el demandado en virtud del segundo embargo.

El apelante sostiene, sin embargo, que la cuestión aún así debatida no le parece tan importante y dirige toda su atención a que teniendo una sentencia a su favor contra la parte que realmente ha debido ser la demandada en el segundo pleito, su objeto principal es obtener la nulidad de este último procedimiento por no haber sido hecho parte en el mismo el esposo de la demandada.  Este aspecto del caso aparenta ser de verdadera importancia y parece serlo realmente si se relaciona con la condición del inmueble embargado.  De la prueba se desprende la fuerte presunción de que se trata de un inmueble con carácter de bien ganancial y, recayendo en los demandados el peso de la prueba en ese extremo, correspondía a ellos destruir tal presunción.  Los demandados no contestaron la demanda, el juicio fué celebrado en rebeldía, pero uno de los gestores de Sucs. de Tomás Cano y Compañía, Francisco Berreteaga, declaró como testigo y si bien afirmó que Daría Alvarez tomaba maderas para la casa y era la que hacía abonos, dijo también que la casa fué fabricada por los esposos Piñeiro-Alvarez y que el marido tenía cuenta con ellos.  No existen más datos de la condición del inmueble, pues ni siquiera el registro de la propiedad arroja información alguna en tal sentido, pues los embargos verificados en ambos pleitos fueron denegados por no aparecer la finca inscrita a nombre de ninguno de los esposos.  La doctrina que se expuso en el caso de *Cortés* v. *Díaz,* 31 D.P.R. 454, es pertinente a este caso.  En él se dijo:

"Cuando el marido o la mujer están en posesión de los bienes, uno u otro sin ninguna prueba documental del título, o a virtud de un título que por sí no es bastante para destruir la presunción de ser gananciales, el peso de la prueba recae siempre en quien

niega el estado ganancial de la propiedad o afirma el carácter privativo de la misma. No es necesaria la prueba de la adquisición durante el matrimonio para establecer una base a fin de que pueda tener lugar la presunción legal de ser gananciales los bienes.''

Parece claro que si el inmueble pertenecía a la sociedad conyugal de los esposos Piñeiro-Alvarez, la sentencia que se dictó por la corte municipal contra Daría Alvarez no podía hacerse efectiva en la finca embargada por el mismo principio que se dejó establecido en el caso de *Matheu* v. *Murillo et al.*, 25 D.P.R. 329–331. Si la finca es ganancial, no se puede aplicar al pago de una reclamación que se dirige solamente contra la esposa. El principio se funda en la misma ley. Para ello se necesitaba el concurso del marido, según dispone el artículo 54 del Código de Enjuiciamiento Civil que establece en tal sentido la regla general salvo las excepciones: de referirse la acción a bienes propios, acciones entre sí de esposo y esposa o cuando ésta vive separada de aquél, a causa de haber sido abandonada. De otro modo queda en pie la regla general de que el esposo es el representante nato de la sociedad de gananciales, artículo 159 del Código Civil Revisado; y únicamente él es quien tiene la representación de la sociedad conyugal para demandar o ser demandado, o en todo caso, su concurso es necesario en toda acción que afecte a la sociedad conyugal o sus bienes hayan de sujetarse a las responsabilidades del pleito. En la obra *Mckay on Community Property,* p. 440, se dice:

"La ley sobre bienes gananciales no afrece sino pocas reglas especiales de alegaciones y práctica; en general mientras existe la sociedad conyugal, el marido es el único representante legal de los asuntos de la comunidad; las deudas de la sociedad conyugal son las suyas; los bienes están bajo su único control y dominio; él sólo representa los intereses de la comunidad como demandado; el interés de la esposa en los bienes comunes está durante el matrimonio representado por el esposo, y por el marido solamente. Los bienes conyugales no pueden ser vendidos en procedimientos judiciales ni hacerse una adjudicación que obligue a la comunidad, o

que pueda procederse contra ella excepto en el caso en que el ma-
rido es una parte o está legalmente representado."

"El Código de Enjuiciamiento Civil, secciones 578 y 579, que
autorizan dictar sentencias contra una o varias partes, sólo son
aplicables a las partes mancomunadamente responsables y no au-
toriza el dictar sentencia contra la esposa solamente cuando ella es
demandada y el marido es una parte necesaria." *McDonald* v.
*Porsh,* 136 Cal. 301 (68 Pac. 817.)

Demostrado como queda que en el procedimiento seguido
ante la Corte Municipal de Guayama por *Sucs. de Tomás
Cano y Compañía* v. *Daría Alvarez* se necesitaba el concurso
del marido, o que en todo caso, la sentencia dictada no po-
día ejecutarse en la finca embargada, la cuestión última
para resolver sería si dicho procedimiento puede ser objeto
de ataque colateral mediante la acción entablada por el de-
mandante-apelante. Desde luego que si respecto al primer
embargo practicado en el pleito del demandante contra Pi-
ñeiro no hubiera dudas acerca de su vigencia y validez, la
cuestión sería más fácil para resolver. *Prima facie* el prin-
cipio de primero en tiempo, primero en derecho, decidiría
el punto y la demandada Tomás Cano y Compañía tendría
que soportar la primera carga o gravamen, redimirlo o dis-
cutir en último término su derecho de preferencia. *Santiago*
v. *Capó,* de junio 16, 1924, (pág. 358). Pero dudamos de la
eficacia del primer embargo por haber transcurrido más de
cinco años desde que se hizo firme la sentencia, y para cuyo
aseguramiento se decretó aquel embargo. No importa que
la sentencia misma sirviera de base a una nueva acción me-
diante la cual, por segunda vez, Piñeiro volvió a ser conde-
nado a pagar la suma de $1,168.76. La nueva sentencia no
podía darle validez a un embargo cuya caducidad, como
cuestión de procedimiento, está dispuesta en la ley. Art.
243 del Código de Enjuiciamiento Civil. Dicho precepto
dice:

"Art. 243.—En todos los casos, excepto para cobro de dinero,
podrá exigirse el cumplimiento de la sentencia o llevar a cabo su

ejecución, después de un término de cinco años, a contar desde la fecha en que hubiere sido registrada mediante autorización de. la corte a instancia de parte, o sentencia dada al efecto, en procedimientos adicionales.''

Este precepto no es aplicable a las sentencias para recobrar dinero. Está tomado de los estatutos de California de 1886, p. 704, y no de la enmienda más moderna que se hizo en el artículo 685 del Código Civil de Procedimiento y que permite su aplicación a las sentencias para el pago de dinero. *Maun* v. *McAtee,* 37 Cal. 13; *Harrier* v. *Bassford,* 145 Cal. 531 (78 Pac. 1038). Pero la caducidad de la instancia no implicó en este caso la de la sentencia pues el apelante pudo fundarse en la misma para establecer la nueva acción y obtener, como así lo obtuvo, la segunda sentencia por la cantidad especificada en la primera. El demandante es un acreedor por sentencia de Zenón Piñeiro, esposo de Daría Alvarez, y él tiene el interés legal necesario para ejercitar a nombre y en lugar del deudor, todos los derechos y acciones correspondientes a éste, excepto en los que fuesen inherentes a su persona, ya que no existen más bienes que la finca embargada. Art. 1078 del Código Civil Revisado. Este artículo prescribe:

"Art. 1078.—Los acreedores después de haber perseguido los bienes de que esté en posesión el deudor para realizar cuanto se les debe, pueden ejercitar todos los derechos y acciones de éste con el mismo fin, exceptuando los que sean inherentes a su persona; pueden también impugnar los actos que el deudor haya realizado en fraude de su derecho.''

Establecida la regla, parece que todavía es necesario aclarar si en este caso práctico es inherente o nó al deudor Piñeiro el derecho a pedir la nulidad del procedimiento seguido en la corte municipal, por la omisión de no haberlo hecho parte en dicho procedimiento en concurrencia con su esposa. Scaevola, tomo 19 (ed. 1902), pág. 592, no dice nada concreto en ese particular, comentando el artículo 1111 del Código Civil antiguo, que es equivalente al 1078 antes

citado, pero dice que la jurisprudencia francesa tiene adoptadas varias reglas que conciernen a dicha disposición legal, y entre ellas, la de que los acreedores de la mujer casada, que contratan sin autorización de su marido, pueden oponer en su nombre la nulidad del contrato. Las autoridades americanas en este particular parecen estar en conflicto. Mientras se sostiene en muchos estados que el fallo contra una mujer casada se considera en ningún caso nulo, pero que cuando es erróneo, por fundarse en un contrato que no tiene autoridad para ello, puede dejarse sin efecto por apelación u otro método apropiado; en otros estados las cortes no han estado conforme con esa regla y han declarado que una sentencia personal contra una mujer casada sobre un contrato que el estatuto no le da facultad para celebrarlo, es absolutamente nulo y su nulidad puede atacarse dondequiera que se presente la cuestión. 13 R.C.L. 1456. Sin embargo, en aquellos estados en que no se sostiene esta última doctrina, las cortes se fundan para sostener la validez del fallo en la protección de terceros inocentes cuyos derechos igualmente respetables podían quedar comprometidos. Y este fundamento no parece existir en este caso. Sucs. de Tomás Cano y Compañía tenían conocimiento que Daría Alvarez era la esposa de Zenón Piñeiro, deudor en el primer pleito; ellos conocían, según aparece de la prueba, la condición de bien ganancial de la casa embargada y a ellos le afectaba de todos modos la presunción de gananciales de dicho inmueble; ellos conocieron también por la anotación de su segundo embargo cuando el primero estaba anotado y en todo su vigor que se trataba de la misma finca y que la sentencia que obtuvieran no podía ejecutarse en dicha finca, aplicando la doctrina del caso de *Matheu* v. *Murillo et al., supra;* y por último, la misma inacción de Daría Alvarez en el pleito ante la corte municipal, dejándose dictar un fallo en rebeldía, y por otro lado su esposo, sin acudir a la defensa de su esposa, mostrándose muy diligente en el

primer pleito, agotando todos los medios y recursos de defensa, todo induce a levantar ciertas sospechas de connivencia entre los esposos Piñeiro-Alvarez y Sucs. de Tomás Cano y Compañía para perjudicar los derechos del demandante, quitándole la condición de inocentes a los últimos que intervinieron en el segundo pleito y que por el segundo embargo se hicieron dueños de la finca en virtud del remate y adjudicación de la misma.

Por todo lo expuesto, *debe revocarse la sentencia de la corte inferior y dictarse otra declarando nula la escritura de venta judicial* de 19 de noviembre de 1913 otorgada por el Márshal de la Corte Municipal de Guayama a favor de Sucs. de Tomás Cano y Compañía, *con costas a los demandados.*