CÁDIZ, PETICIONARIO Y APELADO v. JIMÉNEZ, INTERVENTORA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Humacao en pleito sobre operaciones particionales.

No. 1887.—Resuelto en julio 10, 1919.

PARTICIÓN DE HERENCIA—LIQUIDACIÓN DE LA SOCIEDAD DE GANANCIALES—BIENES PRIVATIVOS—BIENES GANANCIALES—INTERPRETACIÓN DEL ARTÍCULO 1334 DEL CÓDIGO CIVIL REVISADO.—El "capital" a que se refiere el artículo 1334 del Código Civil Revisado es el caudal privativo de cada uno de los cónyuges en tanto cuanto puede ser identificado, encontrado o satisfactoriamente probada su inclusión en el activo común. Nada dice respecto del reintegro a ninguno de los cónyuges de los bienes privativos que tuviesen al tiempo de su matrimonio y que hubiesen posteriormente perdido por la mala administración por parte del dueño de los mismos o por otras causas, sin tener en cuenta la cuestión de si dichos bienes se englobaron o no con el fondo común. Aparte de la mera identificación, inventario y adjudicación del caudal privativo, el legislador no pensó en la liquidación y finiquito del capital que jamás hubiese figurado en los negocios de la sociedad conyugal. La mera desaparición del caudal privativo del marido, acompañada de la subsiguiente adquisición de otros bienes, no justifica la conclusión de que el caudal privativo se ha convertido en la masa común. El dar por sentada esta premisa sería anular la presunción de que toda propiedad adquirida por cualquiera de los cónyuges durante el matrimonio se reputa ganancial.

Los hechos están expresados en la opinión.

Abogado del apelante: Sr. Lorenzo Jiménez García.

Abogado del apelado: Sr. Manuel Tous Soto.

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

Quintiliano Cádiz falleció abintestato dejando una viuda y un hijo natural, quien fué declarado por su único y universal heredero. El contador-partidor nombrado por la corte de distrito para dividir el caudal hereditario se encontró con que Cádiz se había casado en julio de 1901, que su esposa nada aportó al matrimonio; que Cádiz con anterioridad a su matrimonio, había adquirido dos casas, que vendió en junio 14 de 1902 en $3,500, de los que $2,879.67 representaba el importe de ciertos gravámenes y el resto, montante a $620.33, le fué entregado al vendedor de contado; que Cádiz aportó $11,600.67 a una compañía mercantil organizada en

abril de 1901, y disuelta en junio 14, 1902, adjudicándosele al mismo Cádiz la cantidad de $15,953.60, ignorándose si el incremento del capital ocurrió durante el matrimonio o con anterioridad al mismo. Los bienes inventariados, y que en su totalidad fueron adquiridos durante el matrimonio, se justipreciaron en $2,678.06. Restando esta cantidad de la suma de $12,287, que se dice haber aportado Cádiz a la sociedad conyugal, el contador-partidor llegó a la conclusión de que la sociedad de gananciales era en deber a la sucesión de Cádiz, con exclusión de todo crédito, la suma de $9,608.94. Basándose en esta teoría todo el caudal hereditario le fué adjudicado al hijo natural, y se estimó haber un saldo a su favor por la suma de $9,608.94, que debería pagársele de cualesquiera bienes gananciales que pudieran luego aparecer.

Por no estar conforme la viuda convino el hijo natural con ciertas enmiendas, por lo cual la corte aprobó el informe tal como quedó enmendado y decretó la partición del caudal hereditario de conformidad con el mismo.

Contra este decreto interpuso la viuda el presente recurso de apelación.

En qué consistieron esas enmiendas no aparece con claridad y habría tenido poca razón para quejarse la apelante si la resolución de la corte inferior hubiera de confirmarse sin discutir sus méritos. Sin embargo, el primer informe del contador-partidor inequívocamente se funda en la teoría de que "cuantos bienes hubieren adquirido antes de la fecha de dicho matrimonio uno u otro de los cónyuges y estuvieren bajo su dominio, constituyen un haber privativo que habrá de reconocérseles y del cual responden los bienes relictos al fallecimiento de Quintiliano Cádiz." El único error apuntado se cometió al estimar "de acuerdo con el contador-partidor que al heredero del causante Cádiz hay que reintegrarle la suma de $12,287, importe de una supuesta aportación matrimonial de dicho causante, adjudicando a tal fin a dicho heredero la totalidad de los bienes gananciales." Cuales

pudieron ser esas enmiendas no aparece de los autos, ni sugiere el apelado que consistieron en el abandono de la teoría sobre que se fundaba el primer informe, o que el resultado ha sido tal que de hecho convierte la contención de la parte apelante en una mera cuestión académica; pero, al admitir aparentemente que la teoría del contador-partidor está apoyada por el decreto de la corte, trata de sostener la una y el otro por sus méritos. Su argumento se funda en el artículo 1334 del Código Civil Revisado, en el que se dispone que "pagadas las deudas y las cargas y obligaciones de la sociedad, se liquidará y pagará el capital del marido y de la mujer, hasta donde alcance el caudal inventariado."

Al contrastar este artículo con su prototipo, el 1423 del código español, el apelado admite desde el principio que los dos preceptos difieren a tal extremo que es inútil invocar las opiniones de los comentaristas del Código Civil Español. No necesitamos, por lo tanto, descansar sobre las varias modificaciones hechas en su revisión, ni en la consiguiente necesidad de haber cautela al interpretar dicho precepto. Bastará decir que los cambios que así se han hecho tienden a remediar, hasta cierto punto, los defectos mencionados por Manresa en el Tomo IX de sus Comentarios, páginas 703 a 727, mediante la adopción de algunas pocas características del sistema de la sociedad de gananciales según han sido desarrolladas en los códigos y decisiones judiciales de ciertos estados.

El artículo 1322 del Código Civil prescribe lo siguiente:

"Se reputan gananciales todos los bienes del matrimonio, mientras no se pruebe que pertenecen privativamente al marido o a la mujer."

Se presumen gananciales y comprados con bienes de la sociedad los bienes adquiridos por cualquiera de los esposos durante el matrimonio. *Longpré* v. *El Registrador de San Juan*, 24 D. P. R. 896; *Delgado* v. *El Registrador*, 23 D. P.

R. 704, 705.  Concuerda con la ley local la doctrina que transcribimos a continuación:

"Cuando cualquiera de los esposos hace constar la alegación de que la propiedad enajenada en su favor es de su privativa pertenencia, y trata de justificar esta alegación con los hechos que se han hecho constar e insertos en el contrato de enajenación, o con el traspaso hecho en su favor, el otro cónyuge y la sociedad deberán reputarse como terceras personas a los efectos del acto o contrato.  El marido como dueño y administrador de sus bienes privativos se reputa como una persona;  como representante y administrador de la sociedad de gananciales, como otra persona;  la esposa con su caudal privativo se reputa como aun otra persona;  las constancias demostrativas de un interés privativo, las inserta uno que, por lo pronto, actúa en oposición a los derechos e intereses del fundo común, y en interés del caudal privativo del marido o de la mujer, según el caso.

"El marido es el representante y administrador del fundo común. y toda propiedad traspasada a su favor se presume _prima facie ganancial,_ y es en efecto ganancial si lo adquiere por cualquier modo, salvo cuando proceda de origen privativo.

"Si el marido pudiera cambiar estas reglas de derecho y probar su derecho separado consiguiendo que su cedente inserte una relación de hechos que demuestren una adquisición privativa, entonces tendría en sus manos el poder de burlar prácticamente la voluntad del Estado y de derogar sus leyes, mediante meras declaraciones extra-judiciales no juradas de hechos insertos en un traspaso verificado en su favor. La ley le coloca en una posición de confianza; y no debería adoptarse ni aplicarse ninguna regla por la cual se le haga fácil violar su fideicomiso, defraudando a su esposa."  McKay Sobre Bienes Gananciales, p. 338, sec. 274–75.  Véanse también los artículos 1186, 159, 161, 1327 del Código Civil."

Basado en principios generales se ha dicho lo siguiente:

"Cuando los bienes privativos se engloban con los gananciales, la masa resultante se convierte en ganancial;  pero queda la cuestión de si el dueño de los bienes privativos perdidos por haberse englobado tienen o no derecho a su reintegro.  Los bienes privativos se pierden porque no pueden ser ni identificados, ni separados de la masa común;  pero cuando la masa común ha tenido realmente incrementos en su valor por una cantidad susceptible de prueba evidente, sería una

regla odiosa la que negara la compensación, y su dureza cobra énfasis cuando el caudal perdido por haberse englobado pertenece a la mujer; por lo general, la desaparición no es culpa suya, sino de su marido. En Texas se le ha negado al marido el derecho a compensación por sus bienes privativos que hayan desaparecido al ser englobados; ésta, como regla *universal,* es injusta, pero cuando se añaden valores no computables al fundo común por virtud de su inclusión en la masa común, no existe base alguna para dictar una sentencia a menos que lo englobado equivalga a una conversión hecha por la comunidad o sociedad de gananciales como cuando los bienes de la mujer los toma el marido y los engloba con el fundo común. McKay Sobre Bienes Gananciales, p. 419, artículo 362.''

Esta cuestión para nosotros está mayormente resuelta en el artículo 1334 del Código Civil, *supra.* El ''capital'' a que ese artículo se refiere es el caudal privativo de cada uno de los cónyuges en tanto cuanto puede ser identificado, encontrado o satisfactoriamente probada su inclusión en el activo común. Nada se dice respecto del reintegro a ninguno de los cónyuges de los bienes privativos que tuviesen al tiempo de su matrimonio y que hubiesen posteriormente perdido por la mala administración por parte del dueño de los mismos o por otras causas, sin tener en cuenta la cuestión de si dichos bienes se englobaron o no con el fundo común. Aparte de la mera identificación, inventario y adjudicación del caudal privativo, el legislador no pensó en la liquidación y finiquito del capital que jamás hubiese figurado en los negocios de la sociedad conyugal. La mera desaparición del caudal privativo del marido, acompañada de la subsiguiente adquisición de otros bienes, no justifica la conclusión de que el caudal privativo se ha convertido en la masa común. El dar por sentado esta premisa sería anular la presunción que toda propiedad adquirida por cualquiera de los cónyuges durante el matrimonio se reputa ganancial. Esto es plenamente evidente.

En el caso de autos en las escrituras de los bienes inmuebles adquiridos durante el matrimonio ni siquiera se

menciona el origen del precio de venta. Cádiz al disolverse la sociedad mercantil antes mencionada parece, como cuestión de hecho, haber recibido $47.58 de contado, y a fin de garantizar el cumplimiento de las obligaciones que contrajo por la escritura de disolución, dejó pignorada cierta cantidad de tabaco valorada en $4,470.87 y otorgó a favor de su socio en la dicha mercantil una hipoteca sobre las dos casas mencionadas al principio por la suma de $2,879.67. El mismo día vendió la finca últimamente mencionada, sujeta al gravamen que sobre ella pesaba, por la suma de $620.33. Esta cantidad agregada a los $47.58 que recibió como producto de la disolución, totaliza la suma de $667.91. No hay nada que demuestre que, fuera de esto, se hubiese alguna vez realizado algo del caudal privativo en cuestión.

En todo caso, la sociedad mercantil se organizó como cosa de tres meses antes del matrimonio y quedó disuelta como un año después. La escritura de disolución revela de su contenido haber habido un incremento de cerca de $5,000 sobre el capital aportado por Cádiz, la mayor parte del cual debió haber acrecentado durante el matrimonio. El precio de venta de las dos casas, incluyendo la hipoteca otorgada en la misma fecha de la venta en garantía de una obligación personal de la propia fecha, fué de $3,500. Una de estas casas fué comprada en el 1899 por 3,000 pesos, de los cuales se pagó la suma de 2,000 pesos al contado y el remanente se garantizó mediante hipoteca. Esta hipoteca fué cancelada después del matrimonio. El costo de la otra casa no aparece, pero a la fecha en que ambas se vendieron dicho costo se calculó en $2,000 de los $3,500, en que se valoraron las dos. Esto ocurrió en menos de un año de contraído el matrimonio.

Si al marido hubiera de reintegrársele, de los bienes gananciales, el caudal privativo que tenía a la fecha de su matrimonio y del que subsiguientemente dispuso, entonces, la razón por la cual, en el presente caso, debiera limitarse dicho

reintegro, en tanto cuanto a los bienes inmuebles se refiere, a la suma de $620.53 no aparece suficientemente clara. Pero, si por el contrario, el montante que en efectivo recibiera a la fecha de la venta fuese la procedente medida para el reintegro, entonces parece más consistente que asimismo se limite a la suma de $47.58 el reintegro por el interés que tenía en la mercantil.

Ciertamente no existe nada que nos demuestre que el marido, mucho menos la sociedad conyugal, hubiese alguna vez recibido alguna cosa más que esa suma en efectivo como producto de la liquidación. Aun, por el contrario, el incremento de cerca de $5,000 sobre el capital invertido en el negocio del tabaco y los $1,000 pagados para cancelar la hipoteca que pesaba sobre la finca a la época del matrimonio, fueron de la sociedad de gananciales; y como tales bienes gananciales derrotarían hasta ese punto cualquier reclamación para reintegrar al marido sus bienes privativos que se hubiesen englobado.

Si se hubiera justificado que el marido había cancelado sus obligaciones personales contraídas al disolverse la sociedad comercial, vuelto a tomar la gerencia y dispuesto del tabaco pignorado en garantía de las mismas, adquirido por cesión la hipoteca sobre la finca que anteriormente tuvo, vendido la maquinaria, utensilios, materias primas y marcas de fábrica adjudicádasle, depositando y girando contra lo producido, o volviéndolo a invertir, en tal forma que se hiciera imposible o impracticable la identificación, o de otro modo llevando a cabo la liquidación del activo sin distinguir su manejo de su administración de la sociedad conyugal, entonces podría hallarse alguna base para la liquidación y pago del "capital" así representado. Aun la continuación del negocio bajo separada y distinta dirección, en determinadas circunstancias, pudo haber creado análoga situación.

Pero no habiéndose justificado nada de esto, estimamos

que no existe nada que liquidar, y, por lo tanto, nada que debe pagarse de los bienes de la sociedad de gananciales.

Lo dicho deberá entenderse solamente respecto de los bienes inmuebles y los de la sociedad mercantil. Puesto que el caso habrá de ser devuelto a la corte inferior, no queremos expresar opinión alguna en esta instancia respecto de la condición jurídica de cierta póliza de seguro clasificada en primera instancia mediante consentimiento más bien que por la resolución dictada por el contador-partidor, ni por la de la corte.

Es de revocarse el decreto recurrido y devolverse el caso para ulteriores procedimientos no inconsistentes con esta opinión.

> *Revocada la resolución apelada y devuelto el caso a la corte inferior para ulteriores procedimientos.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.