SUCESIÓN DE MODESTO ESCALERA FALÚ, ETC., demandantes y recurrentes, *v.* JUSTINO BARRETO ALDAHONDO y su esposa ÁNGELA ORTIZ BERENGUER, demandados y recurridos.

Número 11363.

*Reasignado:* 22 de mayo de 1958. *Resuelto:* 30 de septiembre de 1959.

---

([19]) Jahr, *Law of Eminent Domain* (1957) págs. 225–232; 5 Nichols, *op. cit.* secs. 19.2–19.23, págs. 214–221.

*E. Martínez Rivera* y *Edelmiro Martínez, Jr.,* abogados de los recurrentes; *Francisco Vizcarrondo Morell,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Por la escritura núm. 182 de 7 de noviembre de 1922, otorgada ante el notario Eduardo H. F. Dottin, don Octaviano José Herrera y su esposa, doña Eufemia del Pilar Gorbea, segregaron cuatro parcelas de terreno de otras fincas de su propiedad y luego las agruparon con otra finquita para formar una finca nueva de 11,821.24 metros cuadrados, sita en el lugar denominado "Seboruco", Sección Norte, del Barrio de Santurce del término municipal de San Juan. Por la misma escritura don Modesto Escalera Falú, quien estaba casado con doña Fernanda Verdejo desde agosto 29 de 1885, hizo constar que era dueño, a título de herencia de su padre, de una parcela de 2 cuerdas y 500 milésimas de otra, sita en el mismo sitio conocido por "Seboruco". Herrera y Escalera Falú permutaron entonces las indicadas fincas. En la misma escritura Escalera hizo constar que desde hace muchos años estaba en posesión de una faja de terreno de 219.40 metros

cuadrados ubicada al sur de la parcela que adquiría de Herrera por permuta. Al final de la escritura se incorpora una certificación de mensura hecha por el ingeniero Adolfo Rieckehoff donde se describen las cinco parcelas permutadas a Escalera por Herrera, más la otra parcela que alegaba Escalera haber estado en posesión. En dicha certificación se hace una descripción de la finca que resulta de la agrupación de las cinco parcelas que pertenecieron a Herrera. Se hace constar, además, en dicha certificación que se agrupaba la parcela "F", que es la de 219.40 metros cuadrados que Escalera alegaba estar en posesión por muchos años. Sin embargo, según veremos más adelante, lo cierto es que en la agrupación no se incluyó esa parcela.

Por la escritura núm. 148 de 7 de noviembre de 1922, otorgada ante el notario don José Ramírez Santibáñez, Escalera Falú segregó de la finca que adquirió por permuta con Herrera y de la otra parcela que venía poseyendo, dos fincas: una de 3,784.79 metros cuadrados, que fue segregada de la parcela de 11,821.24 metros cuadrados, y la otra de 152.43 metros cuadrados, que fue segregada de la de 219.40 metros cuadrados, y vendió ambas a Enrique Campillo Abrams, casado con doña María Delgado, la primera por $400 y la segunda por $50. La finca de 3,784.79 metros cuadrados fue inscrita en el Registro de la Propiedad de San Juan a nombre de Campillo, al Folio 126, Tomo 80, de Santurce Norte, Finca núm. 4,102, Inscripción Segunda. En 1925 Campillo vendió un condominio de una tercera parte de esta finca a Juan B. Aranda.

Por la escritura núm. 14, otorgada ante el notario don Pedro C. Timothée, el día 7 de agosto de 1933, Campillo y su esposa hacen constar que son dueños de un condominio de dos terceras partes en la finca de 3,784.79 metros cuadrados que compró a Escalera Falú y le venden dicho condominio a Justino Barreto Aldahondo por $4,500, de los cuales confesaron los vendedores haber recibido $500 y los otros $4,000

se los reservó el comprador para pagar una hipoteca que pesaba sobre la finca y que estaba representada por cuatro pagarés hipotecarios al portador de $1,000 cada uno. Para la fecha de esta venta Campillo adeudaba a Barreto la suma de $500 que estaba representada por dos pagarés, uno por $300 y el otro por $200. La última dueña y tenedora de los cuatro pagarés hipotecarios, doña Sinesia Muñoz Vda. de Cuevas, los vendió y traspasó a don Justino Barreto Aldahondo por escritura pública otorgada en el 1936.

El condominio de dos terceras partes perteneciente a Barreto en la finca de 3,784.79 metros cuadrados fue subastado para el pago de contribuciones en diciembre 29 de 1938 y adjudicado al Dr. Manuel Morales Muñoz por la suma de $508.

En 7 de marzo de 1940 los abogados Jorge y Arturo Ortiz Toro firmaron un convenio en virtud del cual dichos abogados se obligaron a entregar a Barreto la suma necesaria para redimir la propiedad rematada y a ese fin le entregaron un cheque por la suma de $648.69, habiéndose convenido que después de redimida la finca dichos abogados pagarían a Barreto $675 adicionales en el plazo que fijaran las partes, pero que Barreto podía dar por vencido en cualquier momento, y una vez efectuado dicho pago adicional, Barreto se obligaba a traspasar la propiedad a Escalera o a quien éste indicara, y en su defecto, a los abogados Ortiz Toro. El condominio subastado fue redimido por Barreto en marzo 8 de 1940.

Para el 1947 la finca de 3,784.79 metros cuadrados figuraba inscrita en el Registro de la Propiedad de San Juan a nombre de Barreto en cuanto a un condominio de dos terceras partes, y en cuanto al otro condominio de una tercera parte, a nombre de Waldemar Bithorn, quien lo adquirió de los que traían título de Juan B. Aranda.

Por escritura pública otorgada en el 1950 ante el notario don Francisco Vizcarrondo, don Justino Barreto adquirió por compra a don Waldemar Bithorn dicho condominio de una

tercera parte, consolidándose así el título de dominio de Ba-
rreto sobre toda la finca de 3,784.79 metros cuadrados.

Don Modesto Escalera Falú y su esposa doña Fernanda
Verdejo fallecieron en 20 de febrero de 1946 y 17 de mayo
de 1931, respectivamente.

En 11 de marzo de 1948 los herederos de don Modesto Es-
calera y de su esposa, representados por el Lic. E. Martínez
Rivera, escribieron una carta a Barreto requiriéndole para
que compareciera a recibir los $675 y firmara la escritura de
traspaso de la finca a favor de ellos. Barreto contestó esa
carta alegando que no tenía obligación alguna pendiente con
la Sucesión Escalera.

En 1952 los herederos de Escalera y de su esposa inter-
pusieron una acción contra don Justino Barreto y la esposa
de éste, doña Angela Ortiz. La demanda enmendada contiene
tres causas de acción.

En la primera se alega que don Modesto Escalera agrupó
la parcela de 219.40 metros cuadrados perteneciente a la so-
ciedad de gananciales que él tenía constituída con su esposa
doña Fernanda Verdejo, con otras porciones de terreno de su
pertenencia privativa, formando una finca de 11,821.24 me-
tros cuadrados que inscribió en el Registro de la Propiedad
de San Juan; que en el 1922 don Modesto Escalera segregó
de esta finca una parcela de 3,784.79 metros cuadrados y la
traspasó por escritura pública a don Enrique Campillo
Abrams; que tanto la agrupación como el traspaso a Cam-
pillo y los traspasos subsiguientes, son nulos e inexistentes
(1) porque en la finca formada por agrupación se incluyeron
terrenos alegadamente privativos de don Modesto Escalera y
terrenos pertenecientes a la sociedad de gananciales, y (2)
porque ni para la agrupación ni para la segregación y venta
a don Enrique Campillo dio el consentimiento ni la firma doña
Fernanda Verdejo, esposa de Escalera.

En la segunda causa de acción se alega que en la venta
de Escalera a Campillo no medió causa.

En la tercera causa de acción se alega que Barreto se ha negado a cumplir el convenio firmado con los abogados Ortiz Toro y, en su consecuencia, a traspasar el título de la finca en litigio a los demandantes como causahabientes de sus padres.

Contestaron los demandados y se celebró un juicio en los méritos, luego de lo cual el tribunal a quo, después de formular conclusiones de hecho y de derecho, dictó sentencia declarando sin lugar la demanda, con las costas.

■■ El primer error señalado en este recurso carece de méritos. El tribunal sentenciador admitió en evidencia la opinión y sentencia dictada en 1946 por la antigua Corte de Distrito de San Juan en el caso de Desahucio R-1913, seguido por Justino Barreto y Waldemar Bithorn contra Andrés Gastón Guilberts. La finca que fue objeto del desahucio es la misma envuelta en el presente litigio. De la admisión de ese documento es de lo que se quejan los demandantes-recurrentes.

No tienen razón. Cuando los demandados presentaron ese documento en evidencia, ya los demandantes habían presentado y se habían admitido, copias de una demanda de reivindicación de la finca en litigio interpuesta por Barreto y Bithorn contra Gastón y Modesto Escalera, y una moción desistiendo de dicho pleito. En estos documentos se hace referencia al pleito de desahucio y a la sentencia dictada en el mismo. Pero aun en el supuesto de que dicho documento fuera inadmisible, los recurrentes no nos han demostrado, ni nosotros hemos quedado convencidos, de que su admisión les haya causado perjuicio alguno. En verdad no vemos cómo el contenido de ese documento podía afectar la procedencia o improcedencia de las tres causas de acción expuestas en la demanda. El error, de haberse cometido, no es de carácter sustancial y, por lo tanto, no conlleva la revocación de la sentencia. Regla 50 de las de Procedimiento Civil; *Pratt* v. *Reuter*, 79 D.P.R. 962; *Mercado* v. *Am. Railroad Co.*, 61

D.P.R. 228; *Pueblo* v. *Sarria*, 57 D.P.R. 882; *Banco Territorial y Agrícola* v. *González*, 50 D.P.R. 946; *Silva* v. *Carbonell*, 35 D.P.R. 244; *Torres* v. *Am. Railroad Co.*, 34 D.P.R. 689; *Armstrong Hnos.* v. *Turner*, 34 D.P.R. 161.

 En el segundo señalamiento se arguye que el tribunal sentenciador cometió error "al concluir, como cuestión de hecho, que la parcela de terreno compuesta de 219.40 metros cuadrados no fuera agrupada a la porción de terreno adquirida de Octaviano Herrera, por permuta".

Este error tampoco fue cometido. En la escritura de permuta núm. 182, otorgada en 7 de noviembre de 1922, ante el notario Eduardo H. F. Dottin, los esposos Herrera Gorbea exponen que son dueños de cinco fincas que describen bajo las letras "A", "B", "C", "D" y "E". De cada una de esas fincas segregan una parcela que luego agrupan para formar la finca de 11,821.24 metros cuadrados. Esta es la finca que los esposos Herrera Gorbea traspasan por permuta a don Modesto Escalera. Después de hecha la permuta, don Modesto Escalera hace constar en la cláusula Décima de dicha escritura, que desde hace algunos años se halla en posesión de la finca de 219.40 metros cuadrados. No constándole a los esposos Herrera Gorbea que a ellos corresponda algún derecho sobre la susodicha parcela, hacen cesión de ella a favor de Escalera. En la cláusula siguiente de la escritura las partes hacen constar que las medidas y linderos de la finca de 11,821.24 metros cuadrados de terreno han sido fijados de acuerdo con los títulos de la finca y de la mensura y pliego de especificaciones hechos en 16 de octubre de 1922 por el ingeniero civil don Adolfo Rieckehoff, haciéndose formar parte de la escritura copia del citado plano y certificación de mensura.

Un pequeño error cometido en la certificación de mensura, y que no parece escapar al peor de los observadores, es lo que sirve de base a la primera causa de acción. El ingeniero certifica que a requerimiento de don Modesto Escalera ha mensurado una finca de su propiedad en el barrio del "Sebo-

ruco", compuesta de seis parcelas de terreno, de las cuales adquirió cinco por compra de don Octaviano Herrera, marcadas en el plano con las letras "A", "B", "C", "D" y "E", y otra parcela por posesión, marcada en el plano con la letra "F", las que describe. Luego procede a agrupar dichas parcelas, indicándolo así: "Agrupación de las Parcelas 'A', 'B', 'C', 'D' y 'F' ". Sin embargo la descripción de las parcelas "A", "B", "C", "D" y"F", sus rumbos, medidas y áreas superficial corresponden a las parcelas "A", "B", "C", "D", y "E", o sea, se agrupa por el ingeniero la parcela "E" con las parcelas "A", "B", "C" y "D". La parcela "F", que es la finca de 219.40 metros cuadrados, no se agrupa. La suma del área de las parcelas "A", "B", "C", "D" y "E" da el área superficial total de la parcela de 11,821.24 metros cuadrados, formada por agrupación. El error en la certificación de mensura consiste en denominar la parcela "E" con la letra "F".

Las distintas parcelas agrupadas, y que formaron la finca de 11,821.24 metros cuadrados, fueron agrupadas por los esposos Herrera Gorbea y no por Escalera como sostienen los recurrentes. Cuando se hizo la agrupación en la citada escritura núm. 182, las parcelas agrupadas pertenecían a los esposos Herrera Gorbea. Después de agrupadas fue que dichos esposos la traspasaron como una finca nueva a Escalera. Tan no es cierto que la finca marcada con la letra "F" en la certificación de mensura fuera agrupada y formara parte de la finca de 11,821.24 metros cuadrados, que en una escritura posterior, la núm. 148, otorgada en 7 de noviembre de 1922 ante el notario don José Ramírez Santibáñez, Escalera expone que es dueño de dos fincas, una de 11,821.24 metros cuadrados, y la otra de 219.40 metros cuadrados. Esta última es la marcada en la certificación de mensura con la letra "F".

Por la citada escritura núm. 148 Escalera vendió a Campillo dos fincas. Una, compuesta de 3,784.79 metros cua-

drados que fue segregada de la finca de 11,821.24 metros cuadrados, y la otra, compuesta de 152.43 metros cuadrados que fue segregada de la parcela "F" compuesta de 219.40 metros cuadrados. Campillo las adquirió como dos fincas separadas y distintas. La finca de 3,784.79 metros cuadrados, que es la que está en litigio, fue adquirida por Barreto en la forma que ya antes hemos explicado. Y esta finca procede, por segregación, de la finca de 11,821.24 metros cuadrados que era un bien privativo de Escalera.

Es cierto que en el récord no hay prueba suficiente sobre la naturaleza privativa de la finca de 219.40 metros cuadrados que Escalera alegaba venía poseyendo y, por lo tanto, presumimos que es un bien ganancial. *González* v. *Registrador*, 73 D.P.R. 484; *Robles* v. *Guzmán*, 67 D.P.R. 718; *Roselló* v. *Registrador*, 42 D.P.R. 508; *Cortés et al.* v. *Díaz et al*, 31 D.P.R. 454; *Arroyo* v. *Vicario*, 28 D.P.R. 804; *Acosta* v. *Registrador*, 27 D.P.R. 250; *Cádiz* v. *Jiménez*, 27 D.P.R. 651. Para vender dicha finca o una parte de ella, Escalera necesitaba el consentimiento de su esposa. Sin embargo, la parcela segregada de dicho bien ganancial y vendida por Escalera a Campillo no está aquí en litigio.

■■ Los recurrentes arguyen ante nos que tampoco se estableció la procedencia privativa de los bienes permutados por Escalera con don Octaviano Herrera y que, por lo tanto, la finca de 11,821.24 metros cuadrados también debe presumirse ganancial y que, en su consecuencia, la venta de una porción de esa finca hecha por Escalera a Campillo y los traspasos subsiguientes, son nulos e inexistentes porque la esposa de Escalera no consintió.

Este argumento no debe prosperar. La nulidad de la venta hecha por Escalera a Campillo se planteó en la demanda enmendada a base de que Escalera había agrupado bienes privativos suyos con la finca de 219.40 metros cuadrados, que era un bien perteneciente a la sociedad conyugal. Ya hemos visto que no hubo tal agrupación. Los demandados no venían

obligados a probar que los otros bienes permutados por Escalera con Herrera eran privativos de Escalera, ya que esa fue precisamente la teoría de los propios demandantes-recurrentes. De haber alegado los demandantes que los bienes permutados por Escalera a Herrera eran gananciales, los demandados hubieran tenido la oportunidad de presentar prueba en contrario.

Los demandantes-recurrentes no pueden variar su teoría a estas alturas del caso. *Latorre* v. *Cruz*, 67 D.P.R. 743 y casos citados a la página 752.

En virtud de lo antes expuesto, debemos concluir que el tribunal sentenciador no erró al resolver que la parcela de 219.40 metros cuadrados, alegado bien ganancial, no fue agrupada con bienes privativos de Escalera. Siendo ello así, la venta hecha por Escalera a Campillo y los traspasos subsiguientes de la parcela segregada de la finca de 11,821.24 metros cuadrados de terreno, que era un bien privativo suyo, no es nula ni inexistente.

Lo dicho aquí dispone también de los errores tercero y cuarto. Escalera no necesitaba el consentimiento de su esposa para segregar y vender un bien inmueble privativo suyo. Artículo 92 del Código Civil (31 L.P.R.A. sec. 285).

■■ La negativa del tribunal a quo a ordenar el cumplimiento específico del convenio firmado en 7 de marzo de 1940 por Justino Barreto y los abogados Arturo y Jorge Ortiz Toro, es motivo del quinto señalamiento de error. Tampoco fue cometido.

Dicho convenio contiene las siguientes cláusulas, entre otras:

"Segundo: Se convino asimismo en que dichos abogados pagarían a dicho don Justino Barreto la suma de $675.00 dentro de un plazo razonable después de redimida la finca, el cual plazo fijarían de común acuerdo ambas partes y que puede dar por vencida don Justino Barreto en cualquier tiempo y tendrá derecho además a que se le pague intereses sobre dicha suma de $675.00 al tipo del 8% anual.

"Tercero: Se convino asimismo que dichos abogados pagarían a doña María Delgado viuda de Campillo la suma de $150.00 como deferencia póstuma al recuerdo de su esposo premuerto, don Enrique Campillo, por las relaciones de buena amistad que existieron entre don Justino Barreto y dicho don Enrique Campillo.

"Cuarto: Se convino asimismo que una vez que dichos abogados, además de haber satisfecho la suma necesaria para la redención de la finca mencionada, y luego una vez hecho el pago de los $675.00 a dicho Justino Barreto con sus intereses correspondientes hasta la fecha del pago, entonces dicho don Justino Barreto traspasará y se obliga a traspasar la propiedad mencionada a don Modesto Escalera Falú, o a quien éste indicare, y en defecto traspasará dicha propiedad a dichos abogados Arturo y Jorge Ortiz Toro."

Los abogados Ortiz Toro entregaron a Barreto un cheque a su orden por la suma de $648.69, que fue la suma estimada por ambas partes como suficiente para redimir la finca. Sin embargo, no pagaron a Barreto los $675.00, ni los intereses correspondientes dentro del plazo razonable establecido en la cláusula segunda del convenio, ni dentro de las prórrogas que para ello les dio Barreto. Tampoco pagaron los $150.00 a la viuda de Campillo. Como consecuencia, en 10 de agosto de 1942 Barreto escribió a los abogados Ortiz Toro una carta que lee así: "Estimados señores y amigos:—Habiendo vencido el día 6 de agosto corriente la tercera prórroga solicitada por ustedes del convenio acordado por nosotros en relación con el proyectado traspaso de mi finca de 2/3 partes de 3,784.79 metros cuadrados, adquirida del Lcdo. Enrique Campillo, y anteriormente de la propiedad de don Modesto Escalera, y no habiendo dado cumplimiento a lo estipulado en dicho convenio, de fecha 7 de marzo de 1940, según en él se expresa, doy por terminado los términos del mismo, y en tal virtud quedo a su disposición para que me avisen ustedes sobre la liquidación pertinente en relación con los intereses mutuos en dicha proyectada transacción". Esta carta no tuvo respuesta.

El citado convenio contenía obligaciones recíprocas. Los abogados Ortiz Toro se obligaron a pagar a Barreto, además de la suma estimada para redimir la finca, la cantidad de $675 y sus intereses al 8% anual, en el plazo que fijarían las partes, pero que Barreto podía dar por vencido en cualquier tiempo. Además se obligaron a pagar $150 a la viuda de Campillo. Barreto, por su parte, se obligó a traspasar la finca a Escalera o a quien éste designara, o en su defecto, a los abogados Ortiz Toro, una vez éstos cumplieran con lo convenido. Habiendo Barreto dado por vencido el plazo para el pago de los $675 y habiendo vencido además las prórrogas que les concedió, dicha cantidad no fue satisfecha a Barreto.

"La facultad para resolver las obligaciones"—declara el art. 1077 del Código Civil (31 L.P.R.A. sec. 3052) ([1])—"se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe". Barreto tenía derecho a dar por resuelto el contrato, como lo hizo mediante la carta de 10 de agosto de 1942 dirigida a los abogados Ortiz Toro. Véase *Federal Land Bank* v. *Echandía*, 48 D.P.R. 320 y *Camacho* v. *Iglesia Católica*, 72 D.P.R. 353. El que no cumple la obligación que se impuso no tiene derecho a exigir, siendo mutuos y correlativos los deberes, que la otra parte haga lo que se comprometió hacer. *Riera* v. *Macías Vda. de Riera*, 42 D.P.R. 579, 590.

---

([1]) Dicho art. 1077 lee así:

"La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe.

"El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución, aun después de haber optado por el cumplimiento, cuando éste resultare imposible.

"El tribunal decretará la resolución que se reclame, a no haber causas justificadas que le autoricen para señalar plazo.

"Esto se entiende sin perjuicio de los derechos de terceros adquirentes, con arreglo a las secs. 3496 y 3499 de este título, y las disposiciones de la Ley Hipotecaria, Título 30."

Lo dicho es suficiente para desestimar el quinto error, sin necesidad de que entremos a considerar la validez de un convenio en que el marido, sin el concurso de su mujer, se obliga a traspasar el título sobre bienes inmuebles pertenecientes a la sociedad de gananciales. Cf. *Berrocal* v. *Tribl. de Distrito*, 76 D.P.R. 38; *Consolidated Broadcasting Corp.* v. *Conesa*, 65 D.P.R. 792; *Encarnación* v. *Salim*, 69 D.P.R. 766.

■ Los errores sexto, séptimo y octavo se refieren a la apreciación de la prueba hecha por el tribunal sentenciador. Los recurrentes no los discuten, sino que los someten por el análisis del caso hecho al discutir los primeros cinco errores.

Estos errores no fueron cometidos. La prueba sostiene la sentencia objeto de este recurso. No se nos ha demostrado que el tribunal a quo cometiera error al apreciar dicha prueba.

*Por los motivos expuestos se confirmará la sentencia revisada.*

Los Jueces Presidente Sr. Negrón Fernández y Asociado Sr. Belaval no intervinieron.