Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| NAHOMY VELLÓN CORREA<br><br>Recurrido<br><br>v.<br><br>MARTÍN LÓPEZ GARAY<br><br>Recurrente | KLRA202500099 | Revisión procedente del Departamento de Asuntos del Consumidor<br><br>Querella núm.: SAN-2018-0003740<br><br>Sobre: Contrato de Obras y Servicios |
|---|---|---|

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores

Sánchez Ramos, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 17 de junio de 2025.

El Departamento de Asuntos del Consumidor ("DACO") declaró con lugar una querella contra un contratista a cargo de la remodelación de una residencia. Según se explica en detalle a continuación, concluimos que procede la confirmación de la decisión de DACO, pues sus determinaciones fácticas no son claramente erróneas y no se demostró que la agencia cometiese algún error de derecho.

I.

En noviembre de 2018, la Sa. Nahomy Vellón Correa (la "Querellante") presentó ante el DACO una querella (la "Querella") en contra del Sr. Martín López Garay (el "Recurrente" o el "Contratista"). En síntesis, alegó que el Recurrente incumplió un contrato de obras suscrito el 5 de abril de 2018, para remodelar la residencia de la Querellante por la suma de $35,100.00.

La Querellante afirmó que las partes pactaron la relocalización del cuarto de lavado (*laundry room*), la extensión de un cuarto para conectarlo al cuarto de lavado y la adición de un baño a la propiedad, a realizarse en un plazo de ochenta (80) días.

La Querellante explicó que, durante el mes de abril de 2018, le entregó cinco (5) cheques al Recurrente ascendentes a un total de $19,950.00. No obstante, indicó que la obra no pudo culminarse en el plazo estipulado debido a que el Recurrente se ausentó 27 días y faltaron materiales y empleados.

La Querellante sostuvo que, el 14 de julio de 2018, se reunió con el Recurrente en su residencia y acordaron una nueva fecha para entregar el proyecto: 1 de septiembre de 2018. El precio de la obra se ajustó a la suma previamente pagada por la Querellante y el Recurrente se comprometió a proveer materiales y empleados necesarios para terminar la obra en el término pactado. La Querellante alegó que los nuevos acuerdos se confirmaron por las partes, mediante correos electrónicos.

No obstante, la Querellante adujo que el Recurrente no cumplió con los nuevos términos del contrato. La Querellante tomó videos el 2 de septiembre de 2018 para hacer constar que la residencia no estaba en condiciones de habitarla y el estado del proyecto. Nuevamente, las partes acordaron varias fechas para la culminación de varias fases de la remodelación, las cuales el Recurrente también incumplió.

La Querellante añadió que, el 25 de septiembre de 2018, cuando llevaba un mes fuera de la residencia por las filtraciones que el trabajo sin completar ocasionó, le comunicó por teléfono al Recurrente que decidió quitarle el contrato, por su salud, su paz mental y evitar discordia con su esposo. La Querellante solicitó la devolución del dinero pagado al Recurrente y el reembolso de gastos adicionales. Por último, informó que el trabajo fue completado por un tercero.

Luego de varios incidentes procesales, el 8 de marzo de 2019, el Recurrente contestó la *Querella*. En síntesis, alegó que la Querellante exigió numerosos cambios en los trabajos acordados y

añadió trabajos adicionales que retrasaron y encarecieron el proyecto. Añadió que la Querellante decidió cambiar las losas de su hogar, con lo cual retrasó la instalación de losas en el baño. El Recurrente sostuvo que la Querellante quedó a deberle un balance de $23,085.00. Solicitó que se desestimara la Querella en su totalidad o que se le ordenara a la Querellante el pago de $23,085.00, más el reembolso de gastos y honorarios de abogado.

Subsiguientemente, el 23 de julio, el técnico de investigación, Sr. Emanuel Molina Figueroa, llevó a cabo una Inspección Ocular. El 11 de diciembre, el DACO emitió una *Notificación de Informe de Inspección* (el "Informe"). Los resultados de la inspección fueron los siguientes:

> 1. La obra fue terminada por un tercero.
> 2. Se corroboró que el empañetado en el plafón del cuarto master presenta fisuras aleatorias, se requiere resanar el área.
> 3. No se hizo "topping" de 15´x3´x3" en el patio exterior para ocultar tuberías eléctricas instaladas en la obra.
> 4. Hay varillas expuestas en la construcción del nuevo techo, se requiere picar las varillas expuestas e impermeabilizar el área para evitar corrosión en las varillas estructurales.[1]

Además, el Técnico indicó en el Informe que el costo estimado de las reparaciones era de $1,000.00 entre materiales y labor.

El 18 de diciembre de 2019, el Recurrente objetó el Informe de Inspección, mediante una *Moción Objetando Parcialmente el Informe del Inspector del Departamento de Asuntos del Consumidor*. En síntesis, cuestionó que el "topping" del patio exterior no fue parte del contrato y el costo estimado de las reparaciones. En cuanto a las varillas expuestas, estimó razonable coordinar entre las partes para realizar dicha labor.

El 24 de mayo de 2021, el Recurrente presentó una *Moción Sometiendo Informe Pericial y Calificaciones Periciales*. Básicamente,

---

[1] Véase, *Notificación de Informe de Inspección* e *Informe de Inspección Construcción*, Apéndice 10, pág. 62.

el perito del Recurrente concluyó que la Querellante incurrió en múltiples cambios de órdenes y que el Recurrente hizo trabajo adicional que excedió el costo original de la obra.

Al cabo de varios trámites procesales, el 3 de noviembre de 2022, el DACO celebró la vista administrativa en la que declararon la Querellante y el Recurrente (el perito del Contratista no declaró[2]).

El 13 de diciembre de 2024, el Juez Administrativo del DACo emitió una *Resolución* en la que formuló las siguientes determinaciones de hechos:

> 1. La parte querellante y la parte querellada Martín López Garay, suscribieron un Contrato para proyecto de remodelación de residencia ubicada en la Calle Manuel Guerra 885, Urb. El Comandante, San Juan, PR 00924. Dicho contrato fue suscrito el 5 de abril de 2018.
>
> 2. En dicho contrato, se estipularon los trabajos a realizarse a saber: tubería sanitaria, baño, techo y pasillo, relocalización del laundry.
>
> 3. Se pactó que la parte querellada entregara el proyecto terminado en ochenta (80) días luego de firmado el contrato, cosa que no ocurrió.
>
> 4. La cantidad pactada como pago por los trabajos lo fue $35,000.00 e incluía la mayoría de los materiales y la mano de obra.
>
> 5. Comenzados los trabajos en abril 12 de 2018 y luego comenzaron a fallar las entregas de materiales y la asistencia de los empleados.
>
> 6. Durante el mes de abril de 2018, la parte querellante le entregó al contratista la cantidad de $19,950.00, los cuales se desglosaron de la siguiente manera:
>
>    - Cheque número 265 por la cantidad de $3,500.00 — cambiado el 6 de abril de 2018.
>
>    - Cheque número 266 por la cantidad de $4,000.00 — cambiado el 5 de abril de 2018.
>
>    - Cheque número 273 por la cantidad de $5,325.00 — cambiado el 24 de abril de 2018.
>
>    - Cheque número 274 por la cantidad de $5,325.00 — cambiado el 23 de abril de 2018.
>
>    - Cheque número 275 por la cantidad de $1,800.00 — cambiado el 0 de abril de 2018.

---

[2] El Informe Pericial del Recurrente no fue admitido en evidencia debido a que no pudo autenticarse, toda vez que el perito no compareció a la vista.

7. La parte querellante reclamó al querellado por la tardanza y exigió que, si no podía cumplir con lo estipulado en el contrato, que le devolviera el dinero que le habían pagado.

8. El querellado aceptó sus fallas, solicitó una extensión de entrega del proyecto y se llegaron a unos nuevos acuerdos que se confirmaron en un correo electrónico entre las partes el mismo día de la reunión, 14 de julio de 2018.

9. Los acuerdos a los que llegaron las partes en esa reunión fueron los siguientes: a) se acordó entregar el proyecto en un nueva fecha, el 1 de septiembre de 2018; b) el querellado se comprometió en proporcionar todos los recursos necesarios, incluyendo materiales y servicios necesarios para completar el proyecto, así como la calidad del mismo; c) el monto total del proyecto se ajustó a $19,950.00, suma previamente pagada al Sr. Martín Lopez y no se le iba a desembolsar dinero adicional, quedando nulo el resto de los pagos que se establecieron en el contrato original.

10. Del Sr. Martín López no cumplir con estos acuerdos, éste se comprometió a devolver la suma de $19,950.00 a la querellante, quedando sí anulado inmediatamente todo tipo de acuerdo que hubieran tenido.

11. El querellado no cumplió con lo acordado, por lo que la parte querellante contrató los servicios del empleado del querellado para así poder terminar los trabajos que faltaban por hacer y mitigar sus daños.

12. La querellante procedió a radicar la presente querella ante el Departamento de Asuntos del Consumidor (DACO) el 13 de noviembre de 2018 y la cual fue notificada por el DACO el 14 de noviembre de 2018.

13. La inspección de la propiedad se llevó a cabo el 23 de julio de 2019. El Informe de Inspección fue emitido el 10 de diciembre de 2019 por el Técnico de Investigación (Inspector) Emanuel Molina Figueroa y notificado y archivado en autos el 11 de diciembre de 2019. Este constató los defectos alegados en la querella.

14. Este entendió que el querellado dejo inhabitable la casa objeto de la remodelación por lo que excedió las imperfecciones que cabe esperarse en una construcción.[3]

En atención a estas determinaciones de hechos, el DACO

concluyó lo siguiente:

De la prueba presentada por la parte querellante, el querellado dejó inhabitable la casa objeto de la

---

[3] Véase, Resolución, Apéndice 1 del recurso de revisión, págs. 2-4.

remodelación por lo que excede de las medidas de las imperfecciones que cabe esperar en una construcción. Se puede entender que dicho incumplimiento, afecta seriamente la utilización y disfrute de la casa. Por lo que tornan la obra impropia para su uso y causan un perjuicio considerable al no poderse utilizar. Por lo que la querellante para mitigar sus daños tuvo que contratar a un tercero que precisamente era el empleado del querellado para que terminase la obra.[4]

Así pues, el Juez Administrativo declaró *Con Lugar* la Querella y le impuso al Recurrente el deber de devolver a la Querellante la suma de $19,950.00, más $4,000.00 en daños y $2,000.00 por concepto de honorarios de abogado.[5]

El 30 de diciembre, el Recurrente instó una *Moción Solicitando Reconsideración de Determinación Administrativa y Temas Relacionados*. Transcurrido el término de veinte (20) días sin que el DACO tomara acción en torno a dicha solicitud, la misma se considera rechazada de plano.

Inconforme, el 13 de febrero, el Recurrente interpuso el recurso de referencia; formuló los siguientes cuatro (4) señalamientos de error:

Erró el Honorable Juez Administrativo al tomar determinaciones sin haber establecido hechos reales y corroborables que justifiquen las decisiones tomadas

Erró el Honorable Juez Administrativo al determinar que se acordó entre las partes que la parte querellada devolvería la cantidad total de dinero pagado por la querellante por la obra realizada, ascendente en la cantidad de $19,950.00, todo ello sin que se considerara que el dinero fue realmente invertido en la construcción realizada en la casa de la querellante.

Erró el Honorable Juez Administrativo al tomar una determinación en violación al debido proceso de ley[6]

En la alternativa, erró el Honorable Juez Administrativo al imponer penalidad y daños; y era su deber atemperar la penalidad por los daños al ser excesiva.

---

[4] *Íd.*, a la pág.8.
[5] *Íd.*, a las págs. 8-9.
[6] El Recurrente no discute este señalamiento de error en el recurso de referencia por lo cual se tiene por no puesto. Los errores no discutidos en un alegato se entienden renunciados y no son considerados por los tribunales revisores. *Pueblo v. Rosario Paredes*, 209 DPR 155, 189-190 (2022); *Dávila Pollock v. R.F. Mortgage*, 182 DPR 86, 99 (2011); *Morán v. Martí*, 165 DPR 356, 366 (2005).

Luego de varios trámites, el 3 de abril, el Recurrente presentó copia de la transcripción de la vista administrativa, la cual fue luego estipulada por la Querellante. El 2 de mayo, la Querellante presentó su alegato en oposición. Resolvemos.

## II.

Al evaluar una solicitud de revisión judicial, los tribunales tienen que otorgar mayor deferencia a las decisiones que toman las agencias administrativas, pues son éstas las que, de ordinario, poseen el conocimiento especializado para atender los asuntos que les han sido encomendados por ley. *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006). Se presumen correctas las determinaciones de hecho emitidas por las agencias administrativas y éstas deben ser respetadas a menos que quien las impugne presente evidencia suficiente para concluir que la decisión de la agencia fue irrazonable de acuerdo a la totalidad de la prueba examinada. *Íd.*

Por su parte, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme ("LPAU"), Ley 38-2017, 3 LPRA sec. 9675, dispone que el tribunal deberá sostener las determinaciones de hecho de la agencia cuando estén basadas en evidencia sustancial que surja del expediente administrativo. Sin embargo, el tribunal podrá revisar en todos sus aspectos las conclusiones de derecho de las decisiones de la agencia. *Íd.*

En resumen, al ejercer su facultad revisora, el tribunal debe considerar los siguientes aspectos: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hecho están basadas en evidencia sustancial que surge del expediente, y (3) si las conclusiones de derecho fueron correctas. *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012).

## III.

Las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que

intervenga culpa o negligencia. Art. 1042 del Código Civil, 31 LPRA sec. 2992.[7] Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes y deben cumplirse a tenor con los mismos. *Íd.*, Art. 1044, 31 LPRA sec. 2994. Los contratos existen desde que una o varias personas consienten en obligarse con otro a dar alguna cosa o prestar algún servicio. *Íd.*, Art. 1206, 31 LPRA sec. 3371.

Ahora bien, a tenor con el principio imperante de libertad de contratación, los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. *Íd.*, Art. 1207, 31 LPRA sec. 3372. Sin embargo, dicha autonomía se limita en tanto no se deja al arbitrio de uno de los contratantes la validez y el cumplimiento de los contratos. *Íd.*, Art. 1208, 31 LPRA sec. 3373.

De conformidad con la primacía de la libertad de contratación, uno de los principios fundamentales es la buena fe contractual. En efecto, si bien los contratos se perfeccionan por el mero consentimiento, desde entonces obligan no solo al cumplimiento de lo expresamente pactado, sino que abarcan todas las consecuencias que, según su naturaleza, sean conforme a la buena fe, al uso y a la ley. *Íd.*, Art. 1210, 31 LPRA sec. 3375. La buena fe no solo se manifiesta al comienzo del contrato, sino que está presente mientras dure la relación contractual. Se refiere a que las partes adopten un comportamiento leal en toda fase previa a la constitución de tales relaciones y deben también comportarse lealmente en el desenvolvimiento de las relaciones jurídicas constituidas entre ellos. *BPPR v. Sunc. Talavera*, 174 DPR 686, 695 (2008). Este principio impone un arquetipo de conducta social que implica la carga de una

---

[7] Hacemos referencia al Código Civil de 1930, vigente al momento de firmarse el contrato y de suscitarse los hechos que originaron la Querella.

lealtad recíproca de conducta valorable y exigible. *Prods. Tommy Muñiz v. COPAN*, 113 DPR 517, 528 (1982).

Por otro lado, en el caso de las obligaciones recíprocas, si una de las partes entiende que el otro contratante incurrió en incumplimiento de contrato, el primero puede acudir al foro competente en búsqueda de un remedio conforme al Art. 1077 del Código Civil y exigir el cumplimiento específico o la resolución del contrato, pudiendo en ambos casos exigir el resarcimiento en daños y el abono de intereses. 31 LPRA sec. 3052. Así pues, el Artículo 1077 establece una condición resolutoria tácita en todo contrato bilateral, la cual opera *ex proprio vigore*. En consecuencia, si uno de los contratantes incumple, el otro puede darlo por resuelto sin necesidad de que un tribunal así lo declare. *Flores v. Municipio de Caguas*, 114 DPR 521, 529 (1983); *Sucn. Escalera v. Barreto*, 81 DPR 596, 607 (1959) (cita omitida).

IV.

El Artículo 1434 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 4013, establece que "[e]n el arrendamiento de obras o servicios, una de las partes se obliga a ejecutar una obra, o a prestar a la otra un servicio por precio cierto". Sobre la distinción entre un contrato de obra y un contrato de servicio, la norma es que:

> En el contrato de obras se promete un resultado [la obra hecha] con independencia del trabajo ... necesario para realizarlo; y en el segundo [el de servicios] se promete la prestación de los servicios en sí mismos —el dedicarse ... a las labores domésticas, por ejemplo— con independencia del resultado (de la cantidad de obra o de tarea) que con él se haya concluido. *Constructora Bauzá, Inc. v. García López*, 129 DPR 579, 592 (1991), citando M. Albaladejo, Curso de Derecho Civil español común y foral, Barcelona, Librería Bosch, 1977, T. II, págs. 450–451.

En el contrato de obra, "[e]l contratista viene obligado a ejecutar la obra conforme a lo convenido en el contrato, a las reglas del arte de la construcción y a los usos o reglas profesionales." *Master Concrete Corp. v. Fraya, S.E.*, 152 DPR 616, 624 (2000). Por

tratarse el arrendamiento de obras de un contrato bilateral, consensual y oneroso, el incumplimiento de una parte le da derecho a la otra a resolver el contrato o a exigir su cumplimiento específico, más la indemnización por los daños y perjuicios causados. *Constructora Bauzá, Inc.*, 129 DPR a las págs. 592-593; Véase, además, Art. 1077 del Código Civil, *supra.* Así pues, por lo general, "la resolución de una relación obligatoria tiene efectos retroactivos, debiendo devolverse las partes las prestaciones, si alguna, que se hayan entregado, o colocarse ambas en el mismo estado en que se encontraban al momento de contraer la obligación". J. R. Vélez Torres, *Derecho de Obligaciones*, 2da ed. rev., San Juan, EJC, 1997, pág. 72.

V.

Concluimos, sobre la base del récord y lo declarado por las partes, que no se cometieron los errores señalados por el Recurrente. Por consiguiente, se sostiene adecuadamente la conclusión de DACO a los efectos de que procedía la resolución del contrato y la concesión de daños y honorarios de abogado. Veamos.

De entrada, ante un incumplimiento de contrato, no es necesario, para obtener un remedio, el que la otra parte acuerde la resolución del contrato y la devolución de las contraprestaciones. Como explicáramos previamente, la facultad de resolver un acuerdo se entiende implícita en las obligaciones recíprocas. Por consiguiente, la parte perjudicada por el incumplimiento de un contrato puede reclamar el cumplimiento, o la resolución, de la obligación, con el resarcimiento de los daños. Claro está, el incumplimiento de una obligación recíproca conlleva un efecto resolutorio siempre que la obligación incumplida sea una esencial o que su cumplimento constituya el motivo del contrato para la otra parte. *NECA Mortg. Corp. v. A&W Dev. S.E.*, 137 DPR 860, 875 (1995).

En el caso de autos, el récord sostiene adecuadamente la conclusión de DACO a los efectos de que el Contratista no completó la remodelación para la cual fue contratado, aun cuando tuvo varias oportunidades para hacerlo. También el récord apoya la determinación de que la Querellante tuvo que incurrir en gastos adicionales y contratar a otra persona para que terminara el trabajo y poder residir en su casa.

Al ser la remodelación la obligación principal del Contrato, la Querellante podía exigir su resolución con la correspondiente devolución de contraprestaciones. De un lado, procede la devolución del dinero pagado por la Querellante y, por el otro, la entrega al Contratista de cualquier material excedente o herramientas.[8]

De igual modo, DACO podía ordenar al Contratita indemnizar a la Querellante por los daños que su incumplimiento le causó a esta. Por consiguiente, no tiene pertinencia el que, según arguye el Contratista, las partes no hubiesen acordado una "cláusula penal".

En efecto, la prueba documental y oral sustenta la determinación del DACO de que el Contratista incumplió reiteradamente con su obligación principal. Por ejemplo, la Querellante declaró que los empleados se ausentaban con frecuencia y escaseaban los materiales necesarios para la remodelación.[9] Asimismo, la Querellante presentó durante la vista recibos de gastos adicionales,[10] unas hojas de cálculo de Excel que hizo con la información sobre las ausencias, falta de materiales, etc.,[11] y copia de los correos electrónicos en los que detalló las

---

[8] Surge del récord que el Recurrente pudo retirar herramientas y materiales de la residencia de la Querellante antes de la vista administrativa.
[9] Transcripción de la prueba (TPO), pág. 9, líneas 21-25; pág. 17, líneas 4-19.
[10] TPO, págs. 43-45.
[11] TPO, pág. 17, líneas 10-11; pág. 38, líneas 14-24, págs. 41-42.

conversaciones previas que sostuvo con el Contratista para darle oportunidad a este de terminar la remodelación.[12]

Aunque el Contratista declaró que la lluvia afectó los trabajos, el DACO podía, sobre la totalidad de la prueba, concluir que su incumplimiento prolongado no se debió a incidentes climatológicos. Tampoco surge del expediente que notificara a la Querellante en cuanto a dichas circunstancias. Lo que surge del récord y la transcripción de la prueba es un patrón de incumplimiento injustificado por parte del Contratista.

Por otro lado, no resulta excesiva la cuantía concedida a la Querellante por concepto de daños. En varios correos electrónicos la Querellante le indicó al Contratista que el atraso severo en la remodelación le estaba afectando su salud, la paz de su familia, sus nervios, la relación con su esposo y que temía por la salud de su padre (quien le recomendó al Contratista para la remodelación).[13] Además, indicó que no podía vivir en la residencia por el polvo, los escombros, y las filtraciones. Durante la vista, la Querellante reiteró que, por la situación, se afectó su familia, no vivía en la casa, pasó muchos malos ratos, tuvo que sacar dinero adicional para terminar el proyecto y se afectó la paz mental de su papá.[14]

Además, el DACO no estaba obligado por el estimado de costos sugerido en el Informe al determinar la compensación de los daños. Ello porque, cuando se inspeccionó la residencia, el trabajo había sido terminado por otra persona. Por consiguiente, la cuantía sugerida para subsanar los defectos que aun en ese momento quedaban pendientes de atender no corresponde al estado de la obra como la dejó el Contratista.

---

[12] TPO, pág. 20, líneas 11-16; pág. 22, líneas 22-25; pág. 3-23. Los correos electrónicos también fueron anejados a la Querella. Véase, Querella, Apéndice 3, págs. 39-44.
[13] Véase, Querella, Apéndice 3, págs. 39-44.
[14] TPO, págs. 59-60.

Más aún, destacamos que, a pesar de haber contado con oportunidad para hacerlo, el Contratista no presentó prueba pericial que derrotara las conclusiones del Informe.  Aunque, en un momento dado, produjo un Informe Pericial, el mismo no fue admitido porque el perito no compareció a declarar en la vista administrativa.

Por otra parte, aunque el Contratista intentó impugnar la admisión como exhibits de los documentos que la Querellante presentó, durante la vista surgió que algunos de dichos documentos acompañaban la Querella y otros le fueron notificados oportuna y previamente al Contratista.[15]

En fin, el Contratista no logró rebatir la presunción de corrección de las determinaciones fácticas emitidas por el DACO, ni demostrar que el DACO cometiese algún error de derecho.  La Resolución recurrida está respaldada por evidencia sustancial que obra en el récord administrativo y debidamente fundamentada en los preceptos jurídicos aplicables.

VI.

Por los fundamentos que anteceden, se confirma el dictamen recurrido.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[15] TPO, págs. 39-45.